[Civ. No. 13440.   Second Dist., Div. Two.   June 25, 1942.]

EMILIE A. LAWRENCE, Appellant, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

8

Paul Taylor and Bartlett & Kearney for Appellant.

Ray L. Chesebro, City Attorney, and Robert J. Stahl and Edward J. Olstyn, Deputies City Attorney, for Respondents.

McCOMB, J.—From a judgment in favor of respondents after the trial court entered a judgment denying petitioner's application for a writ of mandate requiring respondents to make an order allowing her a pension because of the death of her husband, a police officer of defendant city, petitioner appeals.

The essential facts are:

November 1, 1939, at approximately 5:30 p. m. petitioner's husband, a police officer of the city of Los Angeles, left the central police station in a Ford automobile owned by defendant city apparently en route home. At approximately 6:10 p. m. of the same day while driving in an easterly direction on the wrong side of Alhambra avenue he collided head-on with a truck being driven in a westerly direction upon the same highway. As a result of the accident petitioner's husband received injuries from which he died. At the time of the accident decedent was under the influence of intoxicating liquor.

Petitioner urges three propositions for reversal of the judgment, which will be stated and answered hereunder seriatim.

*First: The trial court committed prejudicial error in receiving in evidence opinions of doctors that petitioner's husband was at the time of his death under the influence of an intoxicating beverage, which opinions were based solely upon the results of tests of the blood of decedent taken from him after his death.*

This proposition is untenable. Opinions of qualified medical doctors as to whether an individual was intoxicated or not predicated upon the percentage of alcohol in the individual's blood, though not conclusive, are admissible when there is a proper preliminary showing that the blood tests upon which such opinions have been predicated have been properly conducted (*State* v. *Duguid,* 50 Ariz. 276 [72 P. (2d) 435, 437]; *Kuroske* v. *Aetna Life Ins. Co.,* 234 Wis. 394 [291 N. W. 384, 387, 127 A. L. R. 1505]; *Commonwealth* v. *Capalbo,* 308 Mass. 376 [32 N. E. (2d) 225, 228]).

In the present case no objection was made that a preliminary foundation had not been laid for the admission of the

testimony of Drs. Louis J. Gogol and J. Dryden Davenport. Therefore, the trial court properly permitted them to testify that in their opinion decedent was intoxicated at the time of his death, since an analysis of his blood disclosed that it contained 0.28% ethanol.[*]

*Second: There is not any substantial evidence to sustain the trial court's findings that:*

*(a) The death of petitioner's husband was not the result of an injury received by him in the course of the discharge of his duties as a police officer; and*

*(b) Petitioner's husband was intoxicated at the time of his death.*

This proposition is likewise untenable.

■ (a) Based on the testimony of eyewitnesses it appears that decedent had been driving on the wrong side of the street for approximately a block before the automobile which he was driving collided head-on with a truck coming in the opposite direction. This testimony, coupled with that of Drs. Gogol and Davenport to the effect that in their opinion decedent was intoxicated at the time of his death, in the absence of any evidence that petitioner's husband was engaged in the pursuit of his duties at the time of the unfortunate accident, resulted in a failure by petitioner to sustain the burden of proving that

---

[*] It appears to be the consensus of the medical profession that when the blood alcohol concentrate of the driver of an automobile is 0.15% (by weight) such fact is conclusive evidence that the driver is under the influence of alcohol. (Committee on Tests for Intoxication of the National Safety Council, Chemical Tests for Intoxication (1938) p. 5; see also for an excellent discussion of the subject ''The Medico-Legal Aspects of the Blood Test to Determine Intoxication,'' by Professors Mason Ladd and Robert B. Gibson, *The Iowa Law Review*, January, 1939, Vol. XXIV, No. 2, p. 191, et seq.; and ''Alcohol in Relation to Traffic Accidents,'' by Richard L. Holcomb, Vol. III, No. 12, *The Journal of the American Medical Association*, September 17, 1938, p. 1076.) The Committee on Tests for Intoxication in its 1940 report thus graphically illustrates the relationship between alcohol in the blood and the degree of intoxication:

THERE IS A DEFINITE RELATION BETWEEN ALCOHOL IN THE BLOOD AND DEGREE OF INTOXICATION

deceased met his death as a result of his employment, and the trial court's finding that petitioner's husband did not receive injuries in the course of his employment which resulted in his death was correct.

██ (b) As we have heretofore determined that the trial court properly admitted the testimony of Drs. Gogol and Davenport that decedent was intoxicated at the time of his death, such testimony is substantial evidence to sustain the trial court's finding upon this issue and also that the death of petitioner's husband resulted from his operating an automobile while intoxicated. Petitioner's argument based upon statements of the trial judge during the trial contrary to the findings is unavailable to petitioner, since the rule is settled in California that the opinion of the trial judge will not be considered by this court for the purpose of determining that the findings of fact are not supported by the evidence (*Cohen* v. *Metropolitan Life Ins. Co.,* 32 Cal. App. (2d) 337, 342 [89 P. (2d) 732]).

*Third: It is immaterial whether the decedent was under the influence of an intoxicating beverage or not, since he died as a result of an injury received during the performance of his duty.*

██ This proposition is untenable. Section 183 of the charter of the city of Los Angeles reads in part thus:

"Whenever any member of the Fire or Police Department shall die as a result of any injury received during the performance of his duty, or from sickness caused by the discharge of such duty, or after retirement, or while eligible to retirement from such department on account of years of service, then an annual pension shall be paid in equal monthly installments to his widow. . . ."

The words, "shall die as a result of any injury received during the performance of his duty," as used in the foregoing section mean that there must have been a causal relation, mediate or immediate, between the duty performed by the deceased and the injury, which has resulted in his death. (See *Rhodes* v. *United States,* 79 Fed. 740, 743 [25 C. C. A. 186]; 48 C. J. (1929), 788, § 9.)

In view of the finding of the trial court supra, which we have held finds substantial support in the evidence, there can be no question that there was no causal connection between the duty which decedent was employed to perform and the injury which resulted in his death. When decedent became

intoxicated, that became a proximate cause of the injury which he subsequently received and which caused his death, and therefore neither he nor his widow was entitled to a pension. The law is accurately stated by Mr. Justice Ward in *MacIntyre* v. *Retirement Board of San Francisco*, 42 Cal. App. (2d) 734, 735 [109 P. (2d) 962] thus:

"The right to a pension is not indefeasible, and an employee, though otherwise entitled thereto, may not be guilty of misconduct in his position and maintain his rights notwithstanding such dereliction of duty."

For the foregoing reasons the judgment is affirmed.

Moore, P. J., and Wood (W. J.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 20, 1942. Carter, J., voted for a hearing.