Gibson, J.
The People appeal from an order of the County Court of Allegany County which reversed the judgment of a Court of Special Sessions, rendered upon a verdict convicting defendant of the crime of operating a motor vehicle while in an *380 intoxicated condition. (Vehicle and Traffic Law, § 1192, subd. 2.) The reversal was grounded on the County Court’s finding that, the People had failed to prove by competent evidence the content of, and police compliance with the police ‘ ‘ rules and regulations ” prescribed by subdivision 1 of section 1194 of the Vehicle and Traffic Law. That subdivision provides, so far as here pertinent, that the operator of a motor vehicle within this State shall be deemed to have given his consent to a chemical test to determine the alcoholic content of his blood, “ provided that such test is administered at the direction of a police officer * * * having reasonable grounds to believe such person to have been driving in an intoxicated condition * * * and in accordance with the rules and regulations established by the police force of which he is a member.”
We have concluded that the evidence was not necessary to the People’s case and, in consequence, that the reversal was in error. The intent of the statute seems to be twofold, first, to provide that the police officer, and not the accused, shall determine which of the several permitted forms of test shall be employed, and, second, to assure that the accused, whose implied consent, although revocable, is under the compulsion of the statute, will receive fair treatment in the selection and administering of the testing procedure, this pursuant to rules and regulations and not according to a police officer’s ad hoc determination in the particular case. It follows that proof of the existent regulations is unnecessary in cases such as this, in which there is presented no substantial question with respect to the validity of the consent or the propriety of the particular form of test selected to be given. The provision for rules and regulations does not bear upon the substantive results of the test, for their reliability is determinable in accordance with medical and scientific standards generally and not according to regulations promulgated by one “ police force ” or another.
Turning to the specifics of the trial, we note that the evidence included the testimony of the arresting State Trooper, that of the physician who took a sample of defendant’s blood and that of the laboratory technician who analyzed it, these witnesses testifying, in turn, to the arrest, blood withdrawal and chemical analysis; that none of the procedures so testified to were challenged and there was, and is, no contention that the *381 blood was improperly taken or tested or that the reported result of the test was not reliable. The defense centered on the People’s failure to produce documentary proof of the Division of State Police Rules and Regulations adopted pursuant to subdivision 1 of section 1194, rather than the State Trooper’s testimony as to his recollection of the substance of them.
It is clear that defendant’s contentions are not advanced to undermine the implied and actual consent or to assert arbitrary or illegal action on the part of the Trooper in directing and determining the nature of the test to be made. It is asserted, rather, that the proof which the prosecution failed to adduce was necessary to the admission in evidence of the test results. In dealing with medical evidence or scientific proof generally, a foundation does, of course, have to be laid. The blood tested must be identified as that taken from defendant within the prescribed period and it must be shown that the tests were properly and accurately made, pursuant to proper and accepted scientific and technological standards. If, as here, the taking, handling and testing of the blood are items unassailably proven as to reliability, it would then appear irrelevant what the departmental rules contained or whether they were complied with. It could not well be argued that substandard regulations would qualify the report of a scientifically inadequate test or exclude proof of a test meeting otherwise recognized standards. This conclusion is consistent with, and finds at least some support in the language of our determinative holding in another case, that “ The failure to file, in a public office, rules governing the tests does not affect the admissibility in evidence of the results of the tests if found by the court to be intrinsically accurate and reliable ” (People v. Fogerty, 18 N Y 2d 664, 666; emphasis supplied); indicating that intrinsic evidence, rather than standards fixed by departmental rules, may properly measure reliability. Our denial of motion for leave to appeal in Matter of Dzialak v. Hults (19 N Y 2d 805) points in the same direction.
Section 1192, which (in subd. 2) defines the crime here in issue, proceeds (in subd. 3) to provide that “ the court may admit evidence of the amount of alcohol in the defendant’s blood taken within two hours of the time of the arrest, as shown by a medical or chemical analysis of his breath, blood, *382 urine, or saliva; and since no other evidentiary conditions precedent are imposed, it seems reasonable to assume that none are required, additional to those mandated by the rules of evidence generally, to qualify scientific proof of this nature. Neither does subdivision 1 of section 1194 prescribe, in terms or by implication, any other or different measure of reliability.[1] Section 71-a, the precursor of.the present section 1194, was enacted by chapter 854 of the Laws of 1953 and originally contained no provision respecting police rules and regulations and the present requirement thereof was added by later amendment (L. 1954, ch. 320). The voluminous interim report of the Joint Legislative Committee on Motor Vehicle Problems (N. Y. Legis. Doc., 1953, No. 25, Interim Report on Chemical Tests for Intoxication), although dealing in great detail with chemical tests for intoxication, made no reference to any “ rules and regulations ” provision such as that subsequently adopted in 1954 and still in force, and the 1953 act contained none. The latter act did provide for the first time, that an operator driving in New York “ shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to suspect such person of driving in an intoxicated condition.” In 1954, a bill (1954 Senate Int. 715, Pr. 732) to amend section 71-a proposed to insert, following the above-quoted sentence, the words, “ The police officer may decide the type of test to be given.” However, the bill which was actually enacted (L. 1954, ch. 320) instead adopted the “ rules and regulations ” provision now in force, so that the statute thereafter provided that an operator driving in New York “ shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood provided that *383 such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving in an intoxicated condition and in accordance with the rules and regulations established by the police force of which he is a member(Italics indicate additions.)[2]
Thus, such legislative history as does exist seems to reinforce the construction that the statute on its face appears to require — that the amendatory clause, now the subject of this appeal, was enacted, first, to make clear that the police, rather than the accused, would select the type of test to be employed in the particular case, and, second, to preserve the driver’s constitutional rights as against possible arbitrary individual action on an ad hoc basis, by providing that police “ rules and regulations ”, rather than a policeman’s fiat, should be the basis of the selection. Neither the purpose nor the explanation bears any relation to admissibility of evidence except in respect of the propriety of the test and the validity of the consent; none, certainly, as to the reliability of the reported test results.
The order should be reversed and the case remitted to the County Court of Allegany County for determination upon the questions of fact raised in that court.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order reversed and case remitted to the County Court of Allegany County for further proceedings in accordance with the opinion herein.

. One commentator wrote: “The New York legislature was not concerned with the reliability of the tests, for that is well established; nor was it concerned with the admissibility into evidence of the results of the tests, for that has already been covered by the Vehicle and Trafile Law of the state. The problem was whether or not the tests could be compelled.” .(Validity of New York Statute Setting out Motorists’ Implied Consent to Chemical Tests for Intoxication, 51 Mich. L. Rev. 1195, 1196-1197.)

. There appears in the Governor’s Bill Jacket (L. 1954, ch. 320) a memorandum, apparently that of the Committee hereinbefore referred to, which discusses this proposed addition, as follows: “II. and in accordance with the rules and regulations established by the police force of which he is a member. This amendment is designed to make clear that the police force and not the driver is to decide the type of test to be given i.e., blood, health [sic], urine or saliva. An opinion by the Counsel to the Department of Taxation and Finance to the police commissioner of New York City pointed out that under the law before amendment the decision as to type of test was to be made by the police. Since the question had been raised, it was thought best to clarify the statute by embodying this administrative decision in the law. The language actually adopted was not that proposed by the Committee but the meaning remains perfectly clear.”