Opinion
WONG, J.
This is a case of first impression concerning the admissibility into evidence in drunk-driving cases of the results of blood alcohol tests which were not performed in accordance with statutory standards (Health & Saf. Code, §§ 436.51, 436.52).
In 1969 by chapter 1421 of the Statutes of 1969, the Legislature added the following provisions to the Health and Safety Code: “436.51. On or *Supp. 3 after January 1, 1971, the testing by or for law enforcement agencies of blood, urine, or tissue for the purposes of determining the concentration of ethyl alcohol in the blood of persons involved in traffic accidents or in traffic violations shall be performed only by a laboratory approved and licensed by the State Director of Public Health for the performance of such tests.”
“436.52. The testing of breath samples by or for law enforcement agencies for purposes of determining the concentration of ethyl alcohol in the blood of persons involved in traffic accidents or in traffic violations shall be performed in accordance with regulations adopted by the State Board of Public Health.
“The rules and regulations shall establish the procedures to be used by law enforcement agencies in administering breath tests for the purposes of determining the concentration of ethyl alcohol in a person’s blood. Such rules and regulations shall be adopted and published, in accordance with the provisions of Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 of the Government Code.”[1]
In the present case the People sought to introduce into evidence the results of a breathalyzer test (People’s Exhs. la and lb), and appellant made a timely objection challenging the admissibility of such evidence on the ground that there was no showing that the said test was administered in accordance with the rules and regulations adopted by the State Board of Health pursuant to section 436.52 of the Health and Safety Code. While the foundational testimony offered by the People would have been sufficient to warrant admission of the test results prior to the enactment of the said statute, it is undisputed that the said test was not made in compliance with the new law. It was appellant’s contention that the failure to comply with the applicable statutory provisions rendered the test results inadmissible as evidence; it was the People’s contention that such failure did not affect the admissibility of such test results. The trial court overruled appellant’s objections and received into evidence the results of the breathalyzer test[2] which substantially contributed to the conviction of appellant on a drunk driving charge (Veh. Code, § 23102, subd. (a)).
The new statute regulating the manner in which law enforcement agencies *Supp. 4 shall obtain chemical tests pertaining to the concentration of ethyl alcohol in the blood of persons involved in traffic accidents or in traffic violations does not expressly state whether or not such tests obtained in violation of such statute are admissible as evidence in a trial. We must, therefore, apply the rules of statutory construction in order to determine the intent of the Legislature.
The People first contend that' the Legislature’s placement in the Health and Safety Code of the law directing the State Board of Public Health to adopt procedures to be used by law enforcement agencies in administering tests of breath samples indicates that the Legislature did not intend to make a showing of compliance of such law as part of the foundation for admissibility of such tests in drunk driving cases. The People further suggest that had the Legislature intended such a showing to be part of the foundation it would have placed the law in the sections of the Vehicle Code which deal with blood alcohol tests (Veh. Code, § 13353).
This contention, however, is contrary to the well settled rule of statutory construction that the separation of the various statutes into codes is for convenience only, and the codes are to be read together and regarded as blending into each other thereby forming but a single statute (In re Porterfield (1946) 28 Cal.2d 91, 100 [168 P.2d 706]; People v. Ashley (1971) 17 Cal.App.3d 1122, 1126 [95 Cal.Rptr. 509]). Moreover, the fact that the new statute also delegated to the State Board of Public Health the duty to approve and to license laboratories authorized to conduct blood alcohol tests for law enforcement agencies made it clear that the placement of the new provisions in the Health and Safety Code was both convenient and logical (Health & Saf. Code, § 436.53).
The People also contend that if the Legislature had intended that a showing of compliance with the law was a necessary foundation to admission into evidence of blood alcohol tests, it would have expressly so stated. In support of this contention, the People refer us to similar laws enacted in West Virginia and North Carolina requiring a showing of compliance with the rules of the Department of Public Health, and expressly stating that such a showing “must” be made before the results of a breathalyzer test would be admissible (N.C.Gen.Stats., § 20-139.1 (b), cited in State v. Powell (1971) 279 N.C. 608, 610-611 [184 S.E.2d 243, 245]; W.V. Code, ch. 17C, art. 5A, § § 1-5, cited in State v. Hood (W.Va. 1971) 184 S.E.2d 334, 336-337).
While we agree that an express provision requiring compliance with the statute as a condition of admissibility of blood alcohol tests would *Supp. 5 have clearly delineated the intent of the Legislature, the absence of such provisions does not necessarily indicate an intent of the Legislature that tests which do not comply with the law are nevertheless admissible in evidence.
In the first place the Legislature did not intend to leave to law enforcement agencies the discretion as to whether or not they would comply with the new statute. The Legislature specifically provided that the testing of blood, urine, and tissue “shall” be performed only by approved and licensed laboratories (Health & Saf. Code, § 436.51), and that the testing of breath samples “shall” be performed in accordance with regulations adopted by the State Board of Public Health (Health & Saf. Code, § 436.52). “Shall” is mandatory (Health & Saf. Code, § 16).
It is obvious that the Legislature recognized the importance of blood alcohol tests to persons involved in traffic accidents and traffic offenses, and sought to increase the reliability and the impartiality of such tests. Thus, the Legislature in enacting the new statute in 1969, delayed the operative date of some of the provisions until January 1, 1971, in order to give law enforcement agencies and laboratories time in which to train personnel and to secure licenses (Health & Saf. Code, §§ 436.53, 436.54). The Legislature also provided that the rules and regulations implementing the statute would be adopted on or before July 1, 1970, but should not be adopted without consulting with representatives of district attorneys, public defenders, coroners, criminalists, pathologists, analytical chemists, and such other persons deemed by the Board of Public Health to be qualified (Health & Saf. Code, § 436.50). It is apparent that the Legislature gave due consideration to the respective interests of all persons who might be affected by the new law and had. reasonable expectation that law enforcement agencies would not attempt to use blood alcohol tests which did not comply with the statutory standards. To permit the use of such tests by law enforcement agencies in the prosecution of criminal cases would frustrate the very purpose of the law. We do not believe that the Legislature in establishing higher standards for reliability and impartiality of blood alcohol tests by or for law enforcement agencies intended to embark upon an exercise in futility.
It should also be noted that in creating laws affecting the admissibility of various classes of evidence, the Legislature has not always seen fit to expressly provide in so many words that certain evidence is or is not “admissible.” For example, Evidence Code section 351 provides: “Except as otherwise provided by statute, all relevant evidence is admissible.” The Law Revision Commission comment concerning this statute enumerates *Supp. 6 various statutes that exclude relevant evidence either for reasons of public policy or because the evidence is too unreliable to be presented to the trier of fact. These statutes appear in at least 15 different codes. A review of these statutes indicates that only 12 of the 50 statutes mentioned in the Law Revision Commission comment expressly provide that the evidence is oris not “admissible.” (See West’s Annot. Cal. Codes, Evid. Code, § 351, comment, p. 189.)
We are of the opinion that the Legislature in enacting Health and Safety Code sections 436.51 and 436.52 intended that law enforcement agencies comply with the provisions thereof in obtaining.blood alcohol tests. We are also of the opinion that in the interest of greater reliability and impartiality of blood alcohol tests performed by or for law enforcement agencies, the Legislature intended to preclude the use by law enforcement agencies of tests which did not comply with the statutory standards. Accordingly, we hold that the trial court erred in admitting into evidence People’s Exhibits: .1 a and lb and that such error was prejudicial.
Judgment is reversed.
Whyte, P. J., concurred.

 The rules and regulations adopted by the State Board of Public Health pursuant to Health and Safety Code section 436.52 may be found in the California Administrative Code, title 17, section 1221 and following.

 The breathalyzer test administered to appellant resulted in a .16 reading, which according to expert testimony would indicate that appellant was definitely under the influence of alcohol to such an extent that he could not operate a motor vehicle safely.