[Crim No. 15259. First Dist., Div. Four. June 28, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
MELBA RAE ADAMS et al., Defendants and Appellants.

**Counsel**

Graham, Gordon & McFarlan, Graham, Gordon, McFarlan & Stewart and Kenneth S. McFarlan for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and

Charles R. B. Kirk, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**CALDECOTT, P. J.**—The sole question presented by this appeal is whether the failure of the breath test to strictly comply with the calibration procedure of Administrative Code section 1221.4, subdivision (b)[1] rendered the results of the test inadmissible in evidence against appellants, who were each charged with violation of Vehicle Code section 23102, subdivision (a). We conclude that it did not.

Breath tests to determine blood alcohol concentration have long been recognized by decisional law as scientifically valid in this state and elsewhere. (*People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *People* v. *Conterno,* 170 Cal.App.2d Supp. 817, 823-825 [339 P.2d 968], and cases cited therein.) ■ In general, the foundational prerequisites for admissibility of testing results are that (1) the particular apparatus utilized was in proper working order, (2) the test used was properly administered, and (3) the operator was competent and qualified. (Cf. *Lawrence* v. *City of Los Angeles,* 53 Cal.App.2d 6, 8 [127 P.2d 931]; see Donigan, Chemical Tests and the Law (2d ed. 1966) (passim); 2 Jones on Evidence (6th ed. 1972) § 14.37; Richardson, Modern Scientific Evidence (2d ed. 1974) §§ 13.10, 13.13a.)

Absent a controlling statute, the test results must be interpreted at the trial by an expert witness (*Conterno, supra,* 170 Cal.App.2d Supp., at p. 824), under the general requirements for expert testimony. (Evid. Code, § 800 et seq.) However, California (and apparently all other states) has adopted statutory presumptions applicable to specified blood alcohol test results. (Veh. Code, § 23126.) Under the statute (added in 1969) 0.10 percent or more by weight of alcohol in the blood gives rise to the presumption that the person was under the influence of intoxicating liquor. (Veh. Code, § 23126, subd. (a)(3).)

Although breath tests for blood alcohol content were, as observed above, admissible by decisional law, in 1966, the Legislature enacted

---

[1]This regulation, and the others referred to herein (Cal. Admin. Code, tit. 17, §§ 1221-1221.5) were amended on November 24, 1975, effective 30 days thereafter.

Vehicle Code section 13353, the so-called "Implied Consent" law, which states in part: "Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine. . . ." The courts have uniformly held that the enactment of this law does not affect the admissibility of the blood alcohol tests under earlier, established case law. (*People* v. *Wren,* 271 Cal.App.2d 788, 791-792 [76 Cal.Rptr. 673]; *People* v. *Fite,* 267 Cal.App.2d 685, 690-691 [73 Cal.Rptr. 666]; *People* v. *Hanggi,* 265 Cal.App.2d Supp. 969, 975 [70 Cal.Rptr. 540].)

In 1969, the Legislature added chapter 5 of division 1, part 1, of the Health and Safety Code, sections 436.50 to 436.63. These sections primarily relate to promulgation of rules and regulations governing the testing by laboratories of alcohol concentration in the blood, and the licensing and control of laboratories performing such tests. Section 436.52 (as amended, effective July 1, 1973) states: "The testing of breath samples by or for law enforcement agencies for purposes of determining the concentration of ethyl alcohol in the blood of persons involved in traffic accidents or in traffic violations shall be performed in accordance with regulations adopted by the State . . . Department of . . . Health.

"The rules and regulations shall establish the procedures to be used by law enforcement agencies in administering breath tests for the purposes of determining the concentration of ethyl alcohol in a person's blood. Such rules and regulations shall be adopted and published in accordance with the provisions of Chapter 4.5 (commencing with Section 11371) of Part 1 of Division 3 of Title 2 of the Government Code." The "shall" wording of the statute is clearly mandatory, according to the definition provided in the code itself. (Health & Saf. Code, § 16.)

Pursuant to this directive, the Department of Health promulgated "Requirements for Breath Alcohol Analysis." (Cal. Admin. Code, tit. 17, §§ 1221-1221.5.) Section 1221 of these regulations states that "[t]he testing of breath samples by or for law enforcement agencies shall be performed in accordance with standards set forth in these regulations." Various standards of performance are set forth in the ensuing sections. Section 1221.4 states: "Procedures for breath alcohol analysis shall meet the following standards: (b) Maintenance of a breath testing instrument shall include the testing of unknown samples, either weekly or following every 100 tests of subjects, whichever comes sooner, by a usual operator of the instrument, and the reporting of the results to the licensed Forensic Alcohol Laboratory which maintains that instrument."

■ It is undisputed in the present case that this last quoted provision was not adhered to by the laboratory. Appellants urge that, because the language of both Health and Safety Code section 436.52 and the Administrative Code sections are mandatory, noncompliance must result in exclusion of the test results from evidence. They contend that the calibration requirement goes to the essence of the substantive value of the tests, and that evidence taken in the absence of statutorily mandated safeguards is incompetent and highly prejudicial. We disagree with this argument for several reasons.

All states have enacted legislation relating to blood alcohol tests. The majority have either followed the guidance of the Uniform Vehicle Code section 11-902, subdivision (c) (1962)[2] and expressly conditioned *validity* of the tests on compliance with health department regulations,[3] or have made the evidence admissible *provided* that the regulations are followed.[4] In these states, the effect of noncompliance is clear: the evidence may not be admitted.[5]

[2] See Uniform Vehicle Code section 11-902.1, subdivision (a)1 (Supp. II 1976).

[3] Ala. Code tit. 36, § 155, cl. 5(b) (Supp. 1973); Alaska Stats., § 28.35.033(3)(d) (1970 and Supp. 1975); Ariz. Rev. Stats. Anno., § 28-692D (Supp. 1973); Ark. Anno. Stats., §§ 75-1045(c)(1), 75-1046(b) Supp. 1975); Fla. Anno. Stats., § 322.262(3) (1975); Ga. Code Anno., § 68A-902.1(a)(1) (1975); Ill. Anno. Stats., ch. 95½, § 11-501(d) (Supp. 1975); La. Stats. Anno., § 32:663 (Supp. 1974); Miss. Code Anno., § 63-11-19 (1973); Mo. Stats. Anno., § 564.441(2) V.A.M.S. (Supp. 1975); Neb. Rev. Stats. Anno., § 39-669.11 (1974); N.H. Rev. Stats. Anno., § 262-A:69-i (III, IV) (Supp. 1975); N.J. Stats. Anno., § 39:4-50.3 (1973); N.C. Gen. Stats. Anno., § 20-139.1(b) (Supp. 1974); Okla. Stats. Anno., ch. 47, § 759 (Supp. 1975); Or. Rev. Stats., § 487.815 (1974); Tenn. Code Anno., § 59-1049 (Supp. 1975); Vernon's Texas Rev. Civ. Stats. Anno., art. 6701l-5(3)(b) (Supp. 1975); Vt. Stats. Anno., tit. 23, § 1203 (Supp. 1975); Wash. Rev. Code, § 46.61.506(3) (1970); Wis. Stats. Anno., § 343.305(9)(a) (1964); Wyo. Stats., § 31-247.5(a) (1975).

[4] Conn. Gen. Stats., § 14-227a(b) (1975); Idaho Code Anno., § 49-352 (Supp. 1975); Ind. Stats. Anno., § 9-4-4-.5-6 (Supp. 1974); Anno. Code of Md., Cts. & Judic. Proc., § 10-304(b), 10-307(a) (1974 and Supp. 1975); N.M. Anno. Stats., § 64-22-2.10A (1972); N.D. Century Code Anno., § 39-20-07(5) (Supp. 1975); Pa. Stats. Anno. tit. 75, § 624.1(a) (Purdon 1971); R.I. Gen. Laws Anno., § 31-27-2(b) (Supp. 1975); W.Va. Code Anno., § 17C-5A-5 (1974); cf. Nev. Rev. Stats., § 484.393 (1973).

[5] See, e.g., *Webster* v. *State* (Alaska 1974) 528 P.2d 1179; *State* v. *Bruins* (La. 1975) 315 So.2d 293; *State* v. *Sinclair* (Mo.App. 1971) 474 S.W.2d 865; *Otte* v. *State* (1961) 172 Neb. 110 [108 N.W.2d 737]; *State* v. *Warf* (1972) 16 N.C. App. 431 [192 S.E.2d 37]; *State* v. *Fogle* (1969) 254 Or. 268 [459 P.2d 873]; *State* v. *Hood* (1971) 155 W.Va. 337 [184 S.E.2d 334]. Compare *Cutchens* v. *State* (Miss. 1975) 310 So.2d 273 (evidence admissible under statutory phrase (contained in other state laws as well) that implied consent provisions do not limit introduction of "other competent evidence" on question of intoxication (cf. Cal. Veh. Code, § 23126, subd. (c)). See also *Patterson* v. *State* (1968) 224 Ga. 197 [160 S.E.2d 815] (compliance with regulations not required *if* statutory intoxication presumptions are not utilized).

Some states have not enacted mandatory regulations governing test procedures.[6] One state has provided that the statutory presumption of intoxication depends upon compliance with the regulations,[7] and a court in that state has held that because the statute does not require exclusion for noncompliance, inadmissibility is not mandated. (*People* v. *Meikrantz* (1974) 77 Misc.2d 892 [351 N.Y.S.2d 549]; but compare *People* v. *Monahan* (1969) 25 N.Y.2d 378 [306 N.Y.S.2d 453, 254 N.E.2d 758], ruling evidence inadmissible under general scientific and medical standards without proof of compliance with statutorily mandated regulations.) Another state has expressly provided that noncompliance goes only to the weight of the evidence.[8]

Several states have enacted legislation like California's, providing that tests shall be made in accordance with the regulations but not expressly conditioning validity or admissibility of the test results thereon.[9] Courts in two of these states have nonetheless held the evidence inadmissible in the absence of strict compliance with the regulations, based upon the mandatory language of the sections. (*State* v. *Hansen* (Iowa 1972) 203 N.W.2d 216; *State* v. *Wallin* (Iowa 1972) 195 N.W.2d 95; *City of Cincinnati* v. *Sand* (1975) 43 Ohio St.2d 79 [72 Ohio Ops.2d 44, 330 N.E.2d 908]; *State* v. *Miracle* (1973) 33 Ohio App.2d 289 [62 Ohio Ops.2d 440, 294 N.E.2d 903]; see also *Jones* v. *Forrest City* (1965) 239 Ark. 211 [388 S.W.2d 386] (same result before statute amended to expressly so provide).) The other states do not appear to have decided the question. However, we may note that in one state whose statute conditions admissibility on compliance with *certain* regulations, courts have held that noncompliance with *other* mandatory requirements in the statute, or technical or minor violations of the statute, does not require

[6]Kans. Stats. Anno., §§ 8-1001, 8-1005 (1975); Ky. Rev. Stats., § 186.565 (1975); Mass. Anno. Laws, ch. 90, § 24 (1974); Mich. Stats. Anno., §§ 9.2325(1), 9.2325(7) (1975); S.D. Comp. Laws Anno., §§ 32-23-1 - 32-23-17 (Supp. 1975); Utah Code Anno., §§ 41-6-44, 41-6-44.10 (1970); Minn. Stats. Anno., §§ 169.121, 169.123 (Supp. 1974).

[7]62A McKinney's Consol. Laws of N.Y. Anno., Vehicle & Traffic Law, §§ 1194-1195 (Supp. 1975).

[8]Va. Code Anno., § 18.2-268(s) (1975). Compare *Shumate* v. *Commonwealth* (1967) 207 Va. 877 [153 S.E.2d 243] (applying the statute) with *Brush* v. *Commonwealth* (1964) 205 Va. 312 [136 S.E.2d 864] and *Kyhl* v. *Commonwealth* (1964) 205 Va. 240 [135 S.E.2d 768] (applying an earlier version of the statute, requiring exclusion for noncompliance).

[9]Colo. Rev. Stats., § 42-4-1202 (1973); Del. Code Anno. tit. 21, §§ 2741, 2746 (1974); D.C. Code Enc. Anno., §§ 40-1001 - 40-1004 (Supp. 1975); Hawaii Rev. Stats., § 286-151 (1968); Idaho Code Anno., § 49-1102 (Supp. 1975); Iowa Code Anno., §§ 321B.3, 321B.4 (Supp. 1975); Me. Rev. Stats. Anno. tit. 29, § 1312 (Supps. 1973, 1975); Mont. Rev. Code, § 32-2142.3(f) (Supp. 1975); Ohio Rev. Code Anno., § 4511.19 (1973); S.C. Code Anno., § 46-344(a) (Supp. 1975).

exclusion of the test results. (*State* v. *Gillis* (1974) 114 N.H. 417 [321 A.2d 576]; *State* v. *Groulx* (1969) 109 N.H. 281 [249 A.2d 690].)

In California, our Evidence Code provides that: "Except as otherwise provided by statute, all relevant evidence is admissible." (§ 351.) Neither the Iowa nor Ohio decisions noted above mention such a statutory scheme explicitly favoring admissibility in the absence of a contrary expression in a statute. Neither the regulations in the Administrative Code, nor Health and Safety Code section 436.52, make reference to the question of admissibility into evidence of tests which are not performed in compliance with the regulations. Appellants cite the language of the Law Revision Commission Comment to Evidence Code section 351 that "[o]ther codes also contain provisions that may in some cases result in the exclusion of relevant evidence" and claim that several of the code sections thereinafter enumerated in the comment contain no express limit on admissibility. This is correct. However, such sections uniformly relate to confidentiality of information, and expressly limit use and/or disclosure; thus, the comment accurately notes that the provisions *may result* in exclusion of relevant evidence, rather than that they *exclude* the evidence.[10] None of the statutes, however, are even remotely similar to those involved in this case.

Additionally, we note that the Legislature rejected an express limitation on admissibility in Assembly Bill No. 789, as amended in the Senate on July 1, 1969. The amendment would have made inadmissible results of tests not performed in approved and licensed laboratories. This language was stricken from the bill in its final form. Although not directly involving the problem at hand, this indicates that Health and Safety Code section 436.51, framed in the same mandatory language as section 436.52, is not to be regarded as excluding evidence obtained in violation of the regulations, most of which relate to laboratory licensing: the statute is not to be read "so as to make it conform to a presumed intention which is not expressed." (*Seaboard Acceptance Corp.* v. *Shay*, 214 Cal. 361, 365 [5 P.2d 882].) "The sweep of the statute should not be enlarged by insertion of language which the Legislature has overtly left

---

[10]E.g., Civil Code sections 4306 (formerly 79.06), 4309 (formerly 79.09), 227; Code of Civil Procedure section 1747; Education Code section 13892 (formerly 14026); Finance Code section 8754 (repealed 1970); Fish and Game Code section 7923; Government Code sections 15619, 18934, 18952, 20134, 31532; Health and Safety Code sections 211.5, 410; Insurance Code sections 735 (repealed 1970), 855; Labor Code section 6309 (formerly 6319); Penal Code sections 290, 938.1, 3046, 3107, 11105; Revenue and Taxation Code section 16563; Unemployment Insurance Code section 2111; Vehicle Code section 16005; Welfare and Institutions Code sections 10850 (formerly 118), 827.

out." (*People v. Brannon,* 32 Cal.App.3d 971, 977 [108 Cal.Rptr. 620].) It would be no less judicial interference with the legislative province to presume that section 436.52 mandates inadmissibility while section 436.51, couched in the same mandatory language, plainly does not so require.

Appellants cite the case of *People v. Foulger,* 26 Cal.App.3d Supp. 1 [103 Cal.Rptr. 156], in support of their contentions. The court therein ruled that noncompliance with the Administrative Code regulations required exclusion of the breathalyzer test results. The court stated that the absence of an express exclusionary provision did not indicate a contrary legislative intent, and that the mandatory nature of the language compelled inadmissibility.

*Foulger* has been disapproved by higher courts on at least two occasions. In *Brannon, supra,* 32 Cal.App.3d 971, the court held that failure to comply with the mandatory language of Vehicle Code section 13353, requiring the arresting officer to inform the arrestee that he has his choice of blood, urine or breath tests, did not render the results of the blood alcohol test inadmissible. The court stated that "[e]vidence obtained in violation of a statute is not inadmissible per se unless the statutory violation also has a constitutional dimension." Having concluded that violation of section 13353 involved no constitutional inhibition, "[i]t follows that absent an express statutory provision making the evidence obtained as a result of such statutory violation inadmissible, the evidence was properly admitted." (32 Cal.App.3d at p. 975.) Moreover, the court "disagree[d] with *Foulger* insofar as it suggests or implies that absent an express provision of the statute excluding the evidence in criminal prosecutions and absent any constitutional violation of a defendant's rights the evidence may be excluded solely because it is proscribed by statute." (32 Cal.App.3d at p. 978; cf. 56 Ops. Cal. Atty. Gen. 38, 40.)

In *People v. Rawlings,* 42 Cal.App.3d 952 [117 Cal.Rptr. 651], the court dealt, in dicta, with the very problem presented herein. Disapproving *Foulger,* the court stated that: "Where a statute, such as this, does not specifically provide that evidence shall be excluded for failure to comply with said statute and there are no constitutional issues involved (and none are involved here) such evidence is not inadmissible. Statutory compliance or noncompliance merely goes to the weight of the evidence." (42 Cal.App.3d at p. 956.)

We agree with *Rawlings* that noncompliance goes merely to the weight of the evidence. The regulations are an expressed standard for competency of the test results; in effect, they are a simplified method of admitting the results into evidence. Were the rule to provide that the evidence of the test results would be inadmissible if the regulation were not followed there would be the incentive to turn the drunk driving case into a contest to find a technical defect in the test procedure so as to have the evidence excluded. Under the present rule, if the test procedure does not comply with the regulations, a defendant is protected, as the prosecution then must qualify the personnel involved in the test, the accuracy of the equipment used and the reliability of the method followed before the results can be admitted. In the present case, as the regulations were not followed, appellants were entitled to attempt to discredit the results by showing that noncompliance affected their validity; indeed, the court instructed that any such noncompliance could be considered by the jury in evaluating the test evidence.

However, we do not agree with appellants' contention that such noncompliance inherently and automatically rendered the machine unreliable and the test results worthless. The expert witness testified that the machine was in good working order, and that he had ascertained its reliability by running standard known samples through it prior to giving each actual test. He stated that this served essentially the same function as the testing of unknown samples called for by the regulation; indeed, he stated that he normally made up the unknown samples used in the laboratory, and that their purpose was to prevent "fudging" of test results (of which there was not even the slightest suggestion by appellants). Appellants do not contend, nor could they on the record presented, that an inadequate foundation was presented as to the reliability of the machine used, despite the technical violation. Nor did they attempt any showing that the noncompliance affected the test results in any way, let alone rendered the results inaccurate.

Noncompliance with the Administrative Code regulations goes only to the weight of the blood alcohol concentration evidence. In accordance with prior case law, the validity of the test itself is to be determined in accordance with general scientific standards as to the foundational elements of properly functioning equipment, properly administered test, and qualified operator. (Cf. *People* v. *Monahan, supra,* 25 N.Y.2d 378 [306 N.Y.S.2d 453, 254 N.E.2d 758].)

The judgment is affirmed.

Christian, J., concurred.

**RATTIGAN, J.**—I dissent. In my opinion, the majority decision is erroneous (1) because it ignores the pertinent decisional law of other jurisdictions, which is exclusively to the contrary; (2) because it overlooks the full dimensions of the "legislative scheme" of the Evidence Code upon which it expressly relies; and (3) because it rejects the one California decision which is correct, in applying the legislative intent underlying Health and Safety Code section 436.52 and the breath-testing regulations promulgated pursuant thereto (*People* v. *Foulger* (1972) 26 Cal.App.3d Supp. 1 [103 Cal.Rptr. 156]), upon the strength of two subsequent decisions which are incorrect and should not be followed. (*People* v. *Brannon* (1973) 32 Cal.App.3d 971 [108 Cal.Rptr. 620]; *People* v. *Rawlings* (1974) 42 Cal.App.3d 952 [117 Cal.Rptr. 651].) I also think (4) that the result reached by the majority should be avoided because it may undermine the valuable law enforcement program of which the breath-testing regulations are a part.

(1)

I do not dispute any part of the majority's carefully compiled summary of the pertinent statutes and decisional law of other jurisdictions. In net effect, however, it shows that only ten of those jurisdictions have statutory and regulatory programs which are similar to California's on the subject of chemical testing for blood-alcohol content, that the courts of only two of them (Iowa and Ohio) have passed upon the admissibility of blood-alcohol evidence which is not shown to have been processed in compliance with the applicable regulations, and that both courts have held the evidence inadmissible. (*State* v. *Wallin* (Iowa 1972) 195 N.W.2d 95, 98; *State* v. *Hansen* (Iowa 1972) 203 N.W.2d 216, 223; *State* v. *Sickles* (1970) 25 Ohio App.2d 1 [54 Ohio Ops.2d 3, 265 N.E.2d 787, 789]; *State* v. *Miracle* (1973) 33 Ohio App.2d 440 [62 Ohio Ops.2d 440, 294 N.E.2d 903, 906-908].) The Iowa and Ohio decisions thus comprise *all* of the relevant authority from other jurisdictions. I consider them persuasive, and I see no reason that a different result should be reached in California.

(2)

Speaking to the Iowa and Ohio decisions, the majority opinion cites the language of section 351 of the California Evidence Code ("Except as

otherwise provided by statute, all relevant evidence is admissible"); notes that the Iowa and Ohio decisions do not mention "such a statutory scheme explicitly favoring admissibility in the absence of a contrary expression in a statute"; and goes on to observe that no such "contrary expression" appears in Health and Safety Code section 436.52 or in the regulations adopted pursuant to it. Without looking to Health and Safety Code section 436.52 at all,[1] I find such "contrary expression in . . . statute[s]" which appear in the Evidence Code itself and within the "legislative scheme" framed by section 351.

I refer to Evidence Code sections 401 and 405, subdivision (a). Under section 401, the breath-test results introduced by the People in this case were " 'proffered evidence' . . . , the admissibility . . . of which is dependent upon the existence . . . of a preliminary fact." The "preliminary fact" (see Evid. Code, § 400) is the maintenance of the breath-testing instrument in compliance with the periodic calibration requirement prescribed in the regulation violated. (Cal. Admin. Code, tit. 17, § 1221.4, subd. (b), hereinafter cited as "regulation 1221.4.") Evidence Code section 405, subdivision (a), requires the exclusion of "proffered evidence" where there is no showing of the "preliminary fact" which is prerequisite to its admissibility.

In combination, sections 401 and 405, subdivision (a), express a newly worded codification of the longstanding rule that evidence is inadmissible, notwithstanding its relevance, where its *authenticity* requires a foundation which is not laid. (Witkin, Cal. Evidence (2d ed. 1966) §§ 1083 [pp. 1003-1004], 1089 [pp. 1009-1010].) The sum of the two sections is an exception, "provided by statute" as mentioned in section 351, to the general rule of that section to the effect that "all relevant evidence is admissible." Stated another way: Section 351 provides that all relevant evidence is admissible "except where otherwise provided by statute." If it is "proffered evidence" for which a foundation is required but not laid, it is inadmissible because it is "otherwise provided by statute" in sections 401 and 405, subdivision (a). No foundation for the breath-test results having been laid here, I would hold them inadmissible.

I do not share the majority's concern that the requirement of such foundation, as a condition precedent of admissibility, will bring about "a

---

[1]Only the silence of the *statute* is material in this respect; the parallel silence of the regulations is both understandable and irrelevant. It is not within the authority of the Department of Health, adopting the regulations in compliance with the statute, to pass judgment upon the admissibility of evidence obtained in violation of the regulations.

contest to find a technical defect in the test procedure so as to have the evidence excluded." In the first place, such a "contest" is commonplace in foundational matters. Secondly, an equally burdensome "contest" will occur, in any event, where the breath-test results are admitted subject to the defendant's right (which the majority would accord him) "to discredit the results by showing that noncompliance [with the regulations] affected their validity." Finally, the purpose of the pertinent statutes (which is to insure the *accuracy* of the tested evidence, as I point out below) means that noncompliance with the regulations is of materially greater substance than a mere "technical defect."

### (3)

I reach the foregoing conclusion without initially resorting to the legislative intent which may be discerned from the silence of Health and Safety Code section 436.52 as to the admissibility of breath-test results produced in violation of regulation 1221.4.[2] I would apply the reasoning of the *Foulger* court in this regard: "While we agree that an express provision requiring compliance with the statute as a condition of admissibility of blood alcohol tests would have clearly delineated the intent of the Legislature, the absence of such provisions does not necessarily indicate an intent of the Legislature that tests which do not comply with the law are nevertheless admissible in evidence. . . . 'Shall' is mandatory (Health & Saf. Code, § 16). . . . It is apparent that the Legislature gave due consideration to the respective interests of all persons who might be affected by the new law and had reasonable expectation that law enforcement agencies would not attempt to use blood alcohol tests which did not comply with the statutory standards. *To permit the use of such tests by law enforcement agencies in the prosecution of criminal cases would frustrate the very purpose of the law. We do not believe that the Legislature in establishing higher standards for reliability and impartiality of blood alcohol tests by or for law enforcement agencies*

---

[2]I place no significance in the facts, recited by the majority, that "the Legislature rejected an express limitation on admissibility in Assembly Bill No. 789, as amended in the Senate on July 1, 1969," and that the limitation was "stricken from the bill in its final form." Assembly Bill No. 789 was the 1969 enactment which produced Health and Safety Code section 436.52 and the full chapter in which it appears. The "express limitation on admissibility" was included in the measure by the Senate amendment of July 1, the Assembly refused concurrence, and the "final form" of the bill emerged from the free conference process. We cannot derive its legislative purpose "from actions of one house of the Legislature which were rejected by the other house. Instead, we must look to the compromise language concurred in by both Senate and Assembly." (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 678 [94 Cal.Rptr. 279, 483 P.2d 1231].)

*intended to embark upon an exercise in futility.*" (*People* v. *Foulger, supra,* 26 Cal.App.3d Supp. 1 at pp. 4-5 [italics added].)

*Foulger* is not to be disregarded solely because it was decided at the superior court level of the appellate structure. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 671, pp. 4584-4585.) It was "disapproved" in the subsequent Court of Appeal decisions cited above (*People* v. *Brannon, supra,* 32 Cal.App.3d 971 at p. 978; *People* v. *Rawlings, supra,* 42 Cal.App.3d 952 at p. 956), but these decisions are not binding upon this court if we disagree with them. (6 Witkin, *op. cit.,* Appeal, § 667, par. (1), p. 4580.)

I respectfully disagree with *Brannon* upon the grounds—perceptively stated in a contemporaneous comment with which I agree—that the court in that case reached an incorrect conclusion by following the wrong precedents, overlooking the right ones, erroneously limiting the exclusionary concept to constitutional (as distinguished from statutory) violations, and misinterpreting the pertinent legislative intent as to the admissibility question presented. (Note (1974) 7 Loyola L.A. L.Rev. 201.) I disagree with *Rawlings* because it follows *Brannon* and because its "disapproval" of *Foulger* is stated in dicta only. (See *People* v. *Rawlings, supra,* 42 Cal.App.3d 952 at p. 956; 6 Witkin, *op. cit. supra,* Appeal, §§ 676-677, pp. 4589-4591.) I therefore conclude that the exclusionary result, correctly reached in *Foulger* as quoted above, has effectively survived its "disapproval" in *Brannon* and *Rawlings* alike.

The express purpose of the breath-testing regulations mandated by Health and Safety Code section 436.52, as expressly stated in section 436.50, is "to insure the competence of . . . [licensed] . . . laboratories and employees to prepare, analyze, and report the results of such tests." Speaking to the full chapter in which the two sections appear, the Attorney General has correctly stated that its purpose is "to insure competency in the securing of *accurate* evidence." (56 Ops. Cal. Atty. Gen. 38, 39 [italics added].) The vital importance of *accurate* blood-alcohol-test results, in a drunk driving prosecution, has been explicitly recognized by our highest courts. (*Schmerber* v. *California* (1966) 384 U.S. 757, 771 [16 L.Ed.2d 908, 920, 86 S.Ct. 1826]; *People* v. *Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *People* v. *Hitch* (1974) 12 Cal.3d 641, 647 [117 Cal.Rptr. 9, 527 P.2d 361]. See also *People* v. *Foulger, supra,* 26 Cal.App.3d Supp. 1 at p. 5.)

The majority hold in effect that breath-test results which may *not* be accurate, for noncompliance with the testing regulations, are nevertheless admissible. I agree with the *Foulger* court that this result "would frustrate the very purpose of the law." (*People* v. *Foulger,* quoted *supra,* 26 Cal.App.3d Supp. 1 at p. 5.) I am unable to join in the majority's rationalization that any question of the accuracy of the illegally tested evidence is to be addressed to its weight alone: in light of the purpose of the regulations, their violation in the breath-testing process means that the results are without any weight at all.

Moreover, the view that a violation of the regulations reaches only the weight of the evidence will permit the prosecution to introduce expert testimony disparaging the wisdom of the regulations themselves. (This is substantially what happened in the present case.) The Legislature thus stands twice second-guessed, once by the admission of the evidence and again by testimony. I am unwilling to countenance this result in either instance.

(4)

I also disagree with the majority holding because it portends substantial problems in the effective enforcement of the drunk driving laws themselves. Under the implied consent law, a California motorist is not deemed to have consented to the *giving* of a specimen of his blood, breath or urine for testing; the specimen may constitutionally be *taken* from him without his consent. (*Schmerber* v. *California, supra,* 384 U.S. 757 at pp. 758-759, 772 [16 L.Ed.2d 908 at pp. 912-913, 920]; *People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 761 [100 Cal.Rptr. 281, 493 P.2d 1145].) He is instead—and in the law's express terms—deemed to have consented to the *test itself.*[3]

The reasonableness of the "implied consent" fiction (see *Serenko* v. *Bright* (1968) 263 Cal.App.2d 682, 690 [70 Cal.Rptr. 1]) necessarily rests upon the premise that the motorist is deemed to have consented to a test which will be lawfully conducted. It is utterly *un*reasonable to extend the fiction to the point that he is deemed to have consented to a test which will be carried out in violation of duly adopted regulations which are

---

[3]The pertinent provision of the implied consent law, quoted in part by the majority, states: "Any person who drives a motor vehicle upon a highway shall be deemed to have given his *consent* to a chemical *test* of his blood, breath or urine for the purpose of determining the alcoholic content of his blood. . . ." (Veh. Code, § 13353, subd. (a) [italics added].)

designed "to insure" its accuracy. (See Health & Saf. Code, § 436.50; 56 Ops. Cal. Atty. Gen. 38, *supra,* at p. 39.) In sum, I believe that his "implied consent" to a *test* must be treated as conditioned upon compliance with regulations which bear the color of law and which control the testing; that, failing such compliance, the consent is inoperative (see *State* v. *Wallin, supra,* 195 N.W.2d 95 at p. 98); and that the consequences may vitiate enforcement of the implied consent law itself.

In the nonconsensual situation, moreover, a blood specimen may constitutionally be taken by force only "under stringently limited conditions" (*Schmerber* v. *California, supra,* 384 U.S. 757 at pp. 771-772 [16 L.Ed.2d 908 at p. 920]) which guarantee that this is done "in a medically approved manner." (*People* v. *Superior Court (Hawkins), supra,* 6 Cal.3d 757 at p. 761.) In the situation before us, the Legislature has brought about the promulgation of regulations which guarantee that a *breath* specimen taken will be tested in a *scientifically* "approved manner." I perceive no substantial or reasonable difference between criminal convictions based upon evidence illegally *obtained* and evidence illegally *processed* (at the hands of the government in either instance). This court's condonation of noncompliance with the testing regulations may accordingly raise constitutional problems which do not now exist.

Finally, a fundamental purpose of the rule excluding evidence illegally *obtained* is to exact obedience to law from those who enforce it. (*People* v. *Cahan* (1955) 44 Cal.2d 434, 445-450 [282 P.2d 905, 50 A.L.R.2d 513] [constitutional violation]. See *Cave* v. *Superior Court* (1968) 267 Cal.App.2d 517, 522 [73 Cal.Rptr. 167] [statutory violation]; Note, *supra,* 7 Loyola L. A. L.Rev. 201 at pp. 203-204.) For this salutary purpose, I cannot distinguish between a scofflaw in a forensic chemical laboratory and one who wears a badge on the street. I would exclude evidence produced, in violation of law, by either.

There are substantial indications in this record that the jury's verdicts were based upon the statutory presumption of intoxication arising from a threshold blood-alcohol content (Veh. Code, § 23126, subd. (a)(3) and, in turn, upon the breath-test results which were reached in violation of regulation 1221.4. I therefore find prejudice as well as error, and would reverse the judgment of conviction accordingly.

Appellants' petition for a hearing by the Supreme Court was denied August 26, 1976. Tobriner, J., Mosk, J., and Sullivan, J., were of the opinion that the petition should be granted.