[No. B222315. Second Dist., Div. Six. Feb. 17, 2011.]

STEVEN BORGER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## Counsel

Edmund G. Brown, Jr., Attorney General, Alicia M. B. Fowler and Pamela C. Hamanaka, Assistant Attorneys General, Celine M. Cooper and Dana T. Cartozian, Deputy Attorneys General, for Defendant and Appellant.

Wilson & Wilson and Denton J. Wilson for Plaintiff and Respondent.

## Opinion

**YEGAN, Acting P. J.**—Here we hold that a defense expert's conclusion that there is a margin of error inherent in a blood-alcohol level (BAC) scientifically measured with an "Intoxilyzer 5000," an approved Department of Motor Vehicles (DMV) breath testing device, may not be used to defeat the legislative determination that a person who drives with a reported blood-alcohol concentration (BAC) of 0.08 percent or higher will suffer suspension of the privilege to drive.

Respondent Steven Borger was arrested for driving under the influence of alcohol and gave two breath tests registering a BAC of 0.09 percent and 0.08 percent. DMV suspended respondent's license for driving a motor vehicle with 0.08 percent or more, by weight, of alcohol in his blood. (Veh. Code, § 13353.2, subd. (a)(1).)[1] The superior court granted respondent's petition for writ of mandate to set aside the suspension. DMV appeals and we reverse.

At 1:20 a.m. on March 18, 2009, California Highway Patrol Officer G. Dana observed respondent swerve across the lane on State Route 227. Respondent crossed the solid white line three times and ran over a traffic cone. Officer Dana stopped respondent and smelled an alcoholic odor emitting from him and the vehicle. Respondent's eyes were red and watery. He denied drinking alcoholic beverages but on further inquiry said, "OK, I had a handful of drinks."

Respondent failed to satisfactorily perform the field sobriety tests and took preliminary alcohol screening (PAS) tests. The PAS tests measured respondent's BAC at 0.087 percent and 0.09 percent. Respondent was arrested for driving under the influence (DUI) and submitted to a breath test which registered a BAC of 0.09 percent and 0.08 percent.

After DMV suspended respondent's license, he challenged the suspension at an administrative hearing. His expert, Jay Williams, testified that all

---

[1] All statutory references are to the Vehicle Code.

"Intoxilyzer 5000" machines have an inherent margin of error of plus or minus 0.02 percent. He said that respondent's BAC could be "anywhere between a 0.06 and a 0.10" and could not say with reasonable scientific certainty that his BAC was 0.08 percent or higher. The DMV hearing officer did not credit Williams's testimony and found that respondent was lawfully arrested for DUI and driving with a BAC of 0.08 percent or more. (§ 13557, subd. (b)(2).) However, the trial court credited Williams's testimony. It impliedly found that respondent's BAC was less than 0.08 percent, granted the writ petition, and ordered DMV to set aside the suspension of respondent's license. This appeal followed.

An appellate court ordinarily reviews the record to determine whether the trial court's findings concerning BAC are supported by substantial evidence. (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) "But where, as here, the determinative question is one of statutory or regulatory interpretation, an issue of law, we may exercise our independent judgment. [Citations.]" (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233 [130 Cal.Rptr.2d 209].) A challenge to the general reliability of an approved breath testing device is, in essence, a challenge to the regulation allowing the device to be on the approved list. It is addressed to our independent judgment.

■ "When a chemical test shows a driver has a blood-alcohol level of 0.08 percent or more within three hours of driving, section 23152, subdivision (b) establishes a rebuttable presumption that the driver also exceeded the permissible blood-alcohol level when driving. This presumption applies in administrative license suspension proceedings. [Citations.]" (*Corrigan v. Zolin* (1996) 47 Cal.App.4th 230, 236 [54 Cal.Rptr.2d 634].)

The trial court acknowledged that "these recorded test results are presumptively valid" but credited Williams's margin-of-error testimony: "[T]here is nothing in the record to dispute Mr. Williams' conclusion that the margin of error would make it impossible to determine the petitioner's blood alcohol level at the time of the stop. In the confines of this narrow analysis, it does not appear that the Department properly found that Mr. Borger was driving a motor vehicle with .08% or more at the time of his stop."

The trial court's terse analysis does not inspire confidence. Williams testified that an "Intoxilyzer 5000" that is in working order meets "the *Adams* requirements" (*People v. Adams* (1976) 59 Cal.App.3d 559 [131 Cal.Rptr. 190]) but has an inherent margin of error of "plus or minus 0.02" percent. There is no disagreement that the "Intoxilyzer 5000" is an "approved instrument" within the meaning of California Code of Regulations, title 17, section 1221.3. Williams did not examine the machine used to test respondent's BAC on March 18, 2009, and he offered no opinion that the machine

was not in working order. The trial court inexplicably credited Williams's theoretical lowest possible BAC and ignored the theoretical highest possible BAC. The logic of the trial court ruling concerning an impossibility to determine respondent's BAC is unknown. In reality, Williams's conclusion would "overrule" every "Intoxilyzer 5000" reported result unless it is 0.10 percent or more. This would change the California Code of Regulations, title 17, sections 1221 through 1221.5 and effectively remove this breath testing device from the Department of Motor Vehicle's "approved instrument" list. Other than testifying that he owned "Intoxilyzer 5000" machines, Williams offered no reasoning to support his conclusion. He offered no evidence of any scientific tests that he conducted with any such machine let alone the one used here. The record does not show that any other experts in the scientific community have reached similar conclusions or that any scientific literature supports Williams's conclusion. To say that his conclusion is bald is an understatement.

■ "Where an expert bases his conclusion upon assumptions which are not supported by the record, upon matters which are not reasonably relied upon by other experts, or upon factors which are speculative, remote or conjectural, then his conclusion has no evidentiary value. [Citations.] In those circumstances the expert's opinion cannot rise to the dignity of substantial evidence. [Citation.]" (*Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1135–1136 [234 Cal.Rptr. 630].) " ' "The chief value of an expert's testimony in this field, as in all other fields, rests upon the *material* from which his opinion is fashioned and the *reasoning* by which he progresses from his material to his conclusion . . . ." ' (Quoting *Carter* v. *United States* (D.C. Cir. 1957) 252 F.2d 608 617 [102 App.D.C. 227].)" (*People v. Coogler* (1969) 71 Cal.2d 153, 166 [77 Cal.Rptr. 790, 454 P.2d 686].) Williams's bald conclusion is speculative and cannot be fairly characterized a "substantial evidence."

■ Respondent's actual recorded test results were presumptively valid and not refuted by competent evidence. (*Manriquez v. Gourley, supra,* 105 Cal.App.4th at p. 1233.) "[W]hat is directly presumed is not the actual reliability of the test. Although we have referred, as a convenient shorthand, to 'the presumed reliability of the test,' what is actually presumed under Evidence Code 664 is *compliance with statutory and regulatory standards*, which in turn gives rise to an inference of reliability. If the licensee shows, through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed, the burden shifts to the Department to prove that the test was reliable despite the violation. [Citations.]" (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 144 [7 Cal.Rptr.2d 818].) Here, the "official standards" were observed.

■ Thus, the trial court erred in ruling that the presumptive validity of the BAC test results could be rebutted by testimony that all "Intoxilyzer 5000" results have an inherent margin of error and might give a high BAC reading. Were we to affirm and credit Williams's conclusion in this published opinion, we would, in essence, rewrite section 13353.2, subdivision (a)(1) to provide that BAC test results of less than 0.10 percent, as measured by the "Intoxilyzer 5000," are presumptively invalid even if the machine used is a certified test instrument maintained, calibrated, and operated in compliance with title 17. (See Cal. Code Regs., tit. 17, § 1221 et seq.; see also *People v. Adams, supra,* 59 Cal.App.3d at pp. 562–566.) ■ We have no power to rewrite the statute to make it conform to a speculative conclusion.

The judgment is reversed. Costs to Appellant.

Coffee, J., and Perren, J., concurred.