[No. C045197. Third Dist. Oct. 7, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
TODD ROBERT HALLQUIST, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II and III.

**COUNSEL**

William A. Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Charles A. French and Laura Wetzel Simpton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NICHOLSON, J.**—A jury convicted defendant Todd Robert Hallquist of driving under the influence of alcohol (Veh. Code, § 23152, subd. (a)—count 1) and driving with a blood-alcohol level of .08 percent or more (Veh. Code, § 23152, subd. (b)—count 2). In a trial by court it was found defendant had three prior driving under the influence convictions (Veh. Code, §§ 23550, 23550.5). Imposition of sentence was suspended and defendant was granted probation on various terms and conditions and fined $1,326 as to each count.

On appeal, defendant contends (1) the trial court erred when it denied his pretrial motion to exclude the results of his preliminary alcohol screening (PAS) test, (2) his counsel rendered ineffective assistance when he failed to request the court to admonish the jury after the prosecutor committed misconduct, and (3) the trial court erred when it failed to stay the fine imposed on count 2. We reject defendant's first two contentions, but agree with the third.

## DISCUSSION

### I

Prior to trial, defendant sought to exclude from evidence the numerical results of the PAS test administered to him by California Highway Patrol Officer Curtis Zaugg after the officer had stopped him for suspected driving under the influence. The court denied the motion, impliedly concluding the foundational requirements for admissibility, as set forth in *People v. Williams* (2002) 28 Cal.4th 408 [121 Cal.Rptr.2d 854, 49 P.3d 203], had been met.[1]

Defendant contends the court's ruling was wrong because (A) it based its finding that the PAS device was properly functioning on inadmissible hearsay evidence, and (B) the PAS test was improperly administered. Neither argument is persuasive.

### FACTS FROM THE PRETRIAL HEARING

California Highway Patrol Officer Casey Simpson testified that for the last year and one-half he had been the "PAS coordinator" for the Chico office.

---

[1] *Williams*, which will be discussed in detail later in this opinion, holds that a PAS test result is admissible upon a showing of either compliance with title 17 of the California Code of Regulations (hereafter title 17) or (1) the PAS device was properly functioning, (2) the test was properly administered, and (3) the operator was qualified to administer the test. (*People v. Williams, supra*, 28 Cal.4th at p. 417.)

Simpson's duties included maintaining the office's 16 PAS devices, and assuring they were within the accuracy limits described by title 17. Simpson was certified to administer PAS tests; he had received special training in the operation and maintenance of the PAS devices by attending a one-day training course in which several instructors described how the PAS devices worked, and he was given "hands-on" experience with the devices, including Alco-Sensor models III and IV.

Title 17 required the devices be tested either every 10 days or 150 tests, whichever came first, and Simpson tested the devices every seven days, which was well within title 17's requirements. Simpson also kept logs of the PAS device accuracy tests.

Simpson determined the accuracy of the PAS devices by using a test solution obtained from the manufacturer of the devices which, in this case, had a known alcohol content of .10 percent, as shown by the container's label. A PAS device meets the accuracy requirements of title 17 if the temperature of the test solution used is from 33.8 to 34.2 degrees centigrade, the temperature of the PAS device itself is in the range 20 to 36 degrees centigrade, and the PAS numerical result is within plus or minus .01 of the test solution. Accuracy checks conducted by Simpson on the PAS device administered by Officer Zaugg on July 21, 2001, to defendant tested .092 on July 17 and .098 on July 24, both within title 17's acceptable accuracy range.

Officer Curtis Zaugg, who was certified to administer the PAS test and had administered over 1,000 such tests, stopped defendant for weaving within his lane. Zaugg testified he first made physical contact with defendant at 11:30 p.m. Zaugg observed defendant for 14 minutes, during which time defendant did not regurgitate, vomit, smoke or eat. After assuring the PAS device was within the proper temperature range, Zaugg administered the test to defendant. The reading was .111. Zaugg did not administer a second test.

Defense expert Kenneth Mark, who had been permitted to remain in the courtroom during the testimony of Officers Simpson and Zaugg, testified the PAS test administered to defendant by Zaugg was unreliable for quantitative evidentiary purposes because the device had not been accurately tested by Simpson. The tests were unreliable because they were based upon Simpson's acceptance that the test solution was .10 percent, when he had no basis other than the container's label for so concluding.

As to Officer Zaugg's administration of the PAS test to defendant, Mark noted that, under both title 17 and the manufacturer's guidelines, for the

numerical result of the PAS to be used to determine blood-alcohol content, the subject must be observed for no less than 15 minutes before administering the test, two tests must be administered two minutes apart, and the tests must be within .02 percent of each other. Additionally, the device used by Zaugg did not contain safeguards against mouth-alcohol contamination, which could result in a falsely high reading. As administered by Zaugg the test was reliable only for showing the presence of alcohol in the blood, not its percentage.

During the hearing, defendant repeatedly objected on hearsay grounds to Officer Simpson's testimony that, based on the label attached to the test solution, the test solution contained .10 percent alcohol. At the conclusion of the hearing the court overruled the hearsay objection, concluding the label stating the solution was .10 percent was not hearsay "because all that the People are trying to do is show [that the] equipment was properly functioning." The court denied defendant's motion to exclude the numerical results of the PAS test.

### A

Defendant contends the trial court erred when it found the test solution container's label stating the content was .10 percent alcohol was not hearsay, and no exception to the hearsay rule permitted its admission. We agree the statement was hearsay, but disagree there was no hearsay exception for its admittance.

■ " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) The container's label stated the test solution was .10 percent alcohol. Since Officer Simpson was relying on the truth of this statement in making his determination whether the PAS device was functioning accurately, the statement on the label was hearsay. (See, e.g., *In re Michael G.* (1993) 19 Cal.App.4th 1674, 1677 [24 Cal.Rptr.2d 260] [information on label of spray can that it contained toluene was hearsay].) Consequently, the court gave the wrong reason for overruling defendant's objection. Nevertheless, the court's ruling, as shown below, was correct and, therefore, we will not disturb it on appeal. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704] [a correct ruling given for the wrong reason will not be disturbed on appeal].)

■ The correct reason for admitting the challenged testimony is that, contrary to defendant's claim, Officer Simpson was testifying as an expert

witness. " '[A]n expert may generally base his opinion on any "matter" known to him, including hearsay not otherwise admissible, which may "reasonably . . . be relied upon" for that purpose. [Citations.] On direct examination, the expert may explain the reasons for his opinions, including the matters he considered in forming them.' " (*People v. Catlin* (2001) 26 Cal.4th 81, 137 [109 Cal.Rptr.2d 31, 26 P.3d 357].)

Defendant claims the record fails to support the assertion Officer Simpson was testifying as an expert for the following reasons: Simpson was merely testifying to the procedures he followed for checking the accuracy of the PAS devices; Simpson could not have qualified as an expert because he was unfamiliar with the term "alveolar air"; the court sustained defense counsel's objection that Simpson was not qualified to answer the question regarding alveolar air; and when Simpson was asked if it was appropriate to use the PAS device for the evidentiary purpose of determining blood-alcohol level, Simpson replied he did not feel comfortable answering the question.

Although Simpson was never expressly declared by the court to be an expert witness on the accuracy of the PAS device, the record amply supports the conclusion he was so testifying and that the parties and court so understood. At one point, when Simpson testified regarding the Alco Sensor IV, defense counsel objected on relevancy grounds because the PAS device used on defendant was the Alco Sensor III. Although the objection was sustained, the prosecutor explained, "I'm simply laying the foundation for him as an expert on the PAS devices in general." At another point, the prosecutor asked Simpson whether the PAS instrument was generally accepted in the law enforcement community. Defense counsel objected, stating, "This witness may be the PAS coordinator and qualified to do accuracy checks on the test, but I think this line of questioning is outside the scope of his expertise." Thus, not only was the prosecutor offering Simpson as an expert witness on the accuracy of PAS devices, but defense counsel conceded the point.

Citing to pages 170 through 171 of the reporter's transcript, defendant asserts Simpson could not be an expert because when he was asked what is "alveolar air" Simpson replied, "What is that?" Defendant misreads the record. At page 63 of the reporter's transcript, Simpson explained that "alveolar air" is "[d]eep lung air," which it is. As to pages 170 through 171 of the reporter's transcript, the precise dialogue is as follows: "Q. [PROSECU-TOR:] . . . Are you familiar with essentially alveolar air? [¶] A. Yes. [¶] Q. What is that?" Thus, it was the prosecutor, not Simpson, who stated "What is that?" Nor was it of any import whether Simpson was an expert on alveolar

air—Simpson's expertise was on checking the accuracy of the PAS devices, which was the subject of his testimony.

Consequently, it is abundantly clear from the record Simpson was both qualified and was testifying as an expert in determining the accuracy of the PAS devices, including the one used on defendant.

## B

Defendant contends the trial court erred in admitting the results of the PAS test because as it was conducted by Officer Zaugg the test was reliable only for the presence of alcohol in his blood rather than being a quantitative measure of that alcohol. We disagree and find *People v. Williams, supra,* 28 Cal.4th 408, controlling.

In *Williams,* an officer administered a single PAS test to the defendant after observing him for only 13 minutes. (*People v. Williams, supra,* 28 Cal.4th at p. 412.) The PAS device had been tested over a year-long period, which included the date upon which the defendant was tested, and yielded results all within title 17's .02-percent accuracy limit. However, the tests were not conducted with the frequency required by title 17. (28 Cal.4th at pp. 412, 417.) Notwithstanding this failure to conform to the requirements of title 17, the court found no abuse of discretion in the trial court's admitting the numerical results of the PAS test because there was evidence of a properly functioning device, a properly administered test, and a qualified operator. (28 Cal.4th at p. 417.)

Here, Officer Simpson provided evidence the PAS device used by Officer Zaugg on defendant was properly functioning. Officer Zaugg provided evidence that he properly administered the test to defendant and that he was a qualified operator for the device. That Zaugg had not observed defendant for 15 minutes before administering the PAS test and that he administered only a single test, which were the same deficiencies which occurred in *Williams,* did not render evidence of the PAS test results inadmissible, but merely went to its weight.

## II, III*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

---

*See footnote, *ante,* page 291.

## DISPOSITION

The $1,326 in fines imposed in count 2 are ordered stayed. In all other respects, the judgment is affirmed.

Sims, Acting P. J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 25, 2006, S138839. Chin, J., did not participate therein.