[No. D047383. Fourth Dist., Div. One. Aug. 1, 2006.]

ERIK ROZE, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

Bill Lockyer, Attorney General, Jacob A. Appelsmith, Assistant Attorney General, and Chris A. Knudsen, Deputy Attorney General, for Defendant and Appellant.

Adam Van Susteren for Plaintiff and Respondent.

OPINION

**O'ROURKE, J.**—The Department of Motor Vehicles (the DMV) appeals a judgment granting Erik Roze's petition for writ of administrative mandamus and ordering the DMV to set aside its order suspending Roze's driver's license. The court ruled the evidence at the administrative hearing did not support the hearing officer's finding that Roze was driving with a blood-alcohol content (BAC) in excess of 0.08 percent, in part because roadside preliminary alcohol screening (PAS) tests showing Roze had 0.104 and 0.108 BAC were unreliable. The DMV contends the court erred by declining to give the PAS test results any weight in determining Roze's BAC; that the DMV's evidence on that element was undisputed and supported by the proper foundational requirements, and there is no basis for the court's conclusion that the PAS tests were unreliable. We conclude the court's factual determination as to the weight of the PAS test evidence is supported by substantial evidence, and accordingly affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

At about 6:30 a.m. on April 24, 2005, California Highway Patrol (CHP) Officer Leonard Chase stopped Roze on southbound Interstate 5 after witnessing him driving at a high rate of speed. After approaching the vehicle and asking Roze for his identifying information, Officer Chase smelled the odor of alcoholic beverage emanating from the car. The officer also observed Roze's eyes were bloodshot and watery. Officer Chase asked Roze, who was chewing gum, to exit his vehicle and spit out the gum. He noticed that Roze walked with an unsteady gait when he accompanied the officer to his patrol car. Officer Chase performed a series of field sobriety tests on Roze including two PAS tests, which he conducted at 6:39 and 6:40 a.m. He filled out a sworn statement on DMV form DS 367, setting forth the facts on which he relied as probable cause for the stop and Roze's arrest. However, Officer Chase left blank the portion of the sworn statement relating to the results of

the breath tests. In his unsworn arrest/investigation report, the officer noted that the results of Roze's PAS tests were respectively 0.104 and 0.108, based upon two "weak" breath samples. Officer Chase transported Roze to the San Diego County Jail, where Roze gave two additional breath samples on a breath machine, but the machine did not print the test results. The officer issued an order suspending Roze's driver's license.

Roze sought an administrative hearing on the suspension order. At the hearing, the DMV hearing officer admitted Officer Chase's sworn statement, arrest/investigation report and Roze's driving record into evidence. Officer Chase testified about his training on PAS tests and his administration of the test on Roze. He testified he had been trained on the device, an Alco-Sensor IV, when it was first introduced to the department, and then used it in the field for the last seven years. He had administered hundreds of such tests in his career. The officer explained that the PAS test was the last field sobriety test he would administer; he inserted a mouthpiece into the machine, which would automatically start its cycle, indicate a zero balance, give a time and temperature reading, clear itself, and flash "test" on its screen. Officer Chase then had Roze blow into the mouthpiece. These steps were consistent with his training and he did not notice anything out of the ordinary about the PAS test device before administering the test. Officer Chase acknowledged he performed the PAS test less than nine minutes after Roze had spit gum out of his mouth; he explained he did not observe Roze for 15 minutes before giving the test because it was merely a field sobriety test: "just a tool that we use to determine whether or not somebody's driving under the influence of alcohol."

The DMV also called CHP Officer Brandon Garland, who was responsible for maintaining the PAS test device used by Officer Chase. Officer Garland brought, and the DMV officer admitted over Roze's objection, a copy of the "Accuracy Check/Calibration Log" for the particular machine at issue, which reflected all of the accuracy checks or calibrations conducted on the device. Officer Garland had attended two training courses on the device, taught one course, and had spent approximately 575 to 600 hours with the devices, performing approximately 3,600 accuracy checks and/or calibrations on the machines. Reviewing the calibration log, he observed it contained data back to August 2002 and showed that no calibration had ever been needed because the machine had been working properly. Officer Garland explained he only performed internal calibrations if the device was reading out of its scope, plus or minus 0.010 percent, as directed by the manufacturer. The officer also testified how he had tried to obtain a false result from the device by testing himself after taking three "swigs" of beer, and then testing himself again after waiting exactly 15 minutes. According to Officer Garland, he had an initial

"inordinate" reading of 0.37 then obtained a proper result of "triple zeros" after waiting, reflecting the dissipation of mouth alcohol. The officer admitted he thought it was important to wait the 15 minutes before conducting the test.

Roze did not testify or present witnesses at the hearing. Although he submitted his own declaration and that of his passenger, the DMV hearing officer did not admit them into evidence because the individuals were not subject to cross-examination. Roze also submitted points and authorities in which he argued the PAS test was unreliable and Officer Chase was not qualified to operate it; that the officer did not intend the test to conform to the rigors of title 17 of the California Code of Regulations[1] or exercise care in the test's execution because he knew he was going to perform another blood-alcohol test at the police station.

The DMV hearing officer reimposed Roze's driver's license suspension. She determined Officer Chase had reasonable cause to believe Roze was driving a motor vehicle in violation of Vehicle Code section 23140, 23152 or 23153; that Roze was lawfully arrested; and he was driving a vehicle while having 0.08 percent or more by weight of alcohol in his blood. The hearing officer found in part that Officer Chase had established a foundation for the reliability of the PAS test results; that there was no indication of any device errors before or after performance of the PAS tests, and there was no reason why the DMV could not rely on the results to determine Roze's blood-alcohol content.

Roze petitioned the superior court for a writ of administrative mandate challenging the validity of the DMV's suspension order. In part, Roze argued the evidence did not permit a conclusion by a preponderance of the evidence that he was driving under the influence of alcohol; that no chemical test showed his level of blood alcohol and that Officer Chase did not follow procedures by observing Roze for 15 minutes before conducting the PAS test.

---

[1] "Title 17 establishes procedures for determining 'the concentration of ethyl alcohol in samples of blood, breath, urine, or tissue of person involved in traffic accidents or traffic violations.' " (*Hernandez v. Gutierrez* (2003) 114 Cal.App.4th 168, 172 [7 Cal.Rptr.3d 307], quoting Cal. Code Regs., tit. 17, § 1215.1, subd. (b).) Among other things, the regulations include standards for licensing and operation of laboratories, procedures for breath-alcohol analysis, and performance of instruments used to analyze breath-alcohol levels. (See *Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 142 [7 Cal.Rptr.2d 818].) Section 1219.3 of title 17 states: "The breath sample shall be collected only after the subject has been under continuous observation for at least fifteen minutes prior to collection of the breath sample, during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked." All references to title 17 are to the California Code of Regulations.

In opposition, DMV argued under *People v. Williams* (2002) 28 Cal.4th 408 [121 Cal.Rptr.2d 854, 49 P.3d 203] (*Williams*), PAS test results were admissible to establish Roze's BAC as long as the evidence established the test was performed with properly functioning equipment and the test was properly administered by a person qualified to do so. It maintained the testimony of Officers Chase and Garland established that foundation, and the test results combined with other circumstantial evidence of Roze's intoxication supported the finding that Roze was driving on the day in question with a BAC of 0.08 or greater.

The court was troubled by the evidence pertaining to Roze's BAC, and whether it exceeded the legal limit. As to the PAS test results, it explained the question before it was not whether the results were admissible in evidence, but what weight should be given them. In discussing that question, the court found the title 17 requirements relevant to the proper administration of the PAS test. It noted that Officer Chase himself had testified he considered the PAS test only a field sobriety test, not a blood-alcohol test, and that the CHP's own forms indicated that the test was not for the purpose of determining the *actual* alcoholic content in the blood. The court pointed out that the maintenance records permitted the machine to have a range of between 0.09 to 0.11 using a 0.10 percent solution, which confirmed to the court that the machine was not intended as a measuring method for discerning actual blood-alcohol levels, but only to confirm the presence of alcohol in a driver for an officer.[2] It further considered Officer Chase's arrest report indicating that Roze's breath sample strength was weak. Based on the unreliability of the PAS test for determining actual blood-alcohol levels versus alcohol presence, and the fundamental unfairness arising from the DMV's reliance on a test that was not intended to establish actual blood-alcohol concentration, the court found the evidence did not support the finding

---

[2] The court said: "But the officer, himself, in a number of places in his own records he states that these tests are [field sobriety] tests, not blood alcohol tests. He doesn't enter them in the blood alcohol test area and two different parts of his paperwork. [¶] Then I look at the maintenance records and page A-19—or every page. Let's look at page A-17 which is the closest in date to this particular alcohol sensor device. If you look on the bottom it states[,] 'If you're reading this within plus or minus 0.01 percent no calibration is required.' And it says that 'If you use a .10 percent solution to test these things, the reading of .09 to .11 is acceptable.' [¶] You're looking at .02 blood alcohol range in a machine and you're looking at a law that requires actual amount, and you are looking at a case where the [blood alcohol] level is .10 and the legal level is .08 and the maintenance record clearly states we allow this type of range, and for me that confirms that these things are not measuring devices, they're not intended to be a measuring method that is used in cases like this. [¶] It confirms to me that these devices are intended to confirm the presence of alcohol in a driver to assist the officer in making that assessment, but not to replace the blood alcohol tests that are given later on according to title 17 protection and then become the real [blood-alcohol] levels."

of blood-alcohol levels greater than 0.08. It granted Roze's petition and set aside the DMV's suspension order. The DMV appeals.

## DISCUSSION

### I. *Administrative Hearing Burdens of Proof/Standard of Appellate Review*

■ This court addressed the burdens of proof at a DMV administrative hearing in *Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227 [130 Cal.Rptr.2d 209] (*Manriquez*). At such a hearing, "the DMV bears the burden of proving by a preponderance of the evidence certain facts, including that the driver was operating a vehicle with a blood-alcohol level of 0.08 percent or higher. [Citations.] The DMV may satisfy its burden via the presumption of Evidence Code section 664. [Citation.] 'Procedurally, it is a fairly simple matter for the DMV to introduce the necessary foundational evidence. Evidence Code section 664 creates a rebuttable presumption that blood-alcohol test results recorded on official forms were obtained by following the regulations and guidelines of title 17. [Citations.] . . . The recorded test results are presumptively valid and the DMV is not required to present additional foundational evidence. [Citation.]' [Citation.] With this presumption, the officer's sworn statement that the breath-testing device recorded a certain blood-alcohol level is sufficient to establish the foundation, even without testimony at the hearing establishing the reliability of the test. [Citations.]

"Once the DMV establishes its prima facie case by presenting documents contemplated in the statutory scheme, the driver must produce affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV. [Citations.] 'The licensee must show, "through cross-examination of the officer or by the introduction of affirmative evidence, that official standards were in any respect not observed . . . ." [Citation.] Once such showing has been made, the burden shifts to the DMV to prove that the test was reliable despite the violation.' " (*Manriquez, supra,* 105 Cal.App.4th at pp. 1232–1233.)

■ When a person petitions for a writ of administrative mandate following an order suspending his or her driver's license, the superior court is required to determine, based on the exercise of its independent judgment, whether the weight of the evidence supports the administrative decision. (*Lake v. Reed* (1997) 16 Cal.4th 448, 456 [65 Cal.Rptr.2d 860, 940 P.2d 311];

Code Civ. Proc., § 1094.5, subd. (c).) In reviewing the administrative record, the court acts as a trier of fact; it has the power and responsibility to weigh the evidence and make its own determination about the credibility of the witnesses. (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658–659 [53 Cal.Rptr.2d 4].) While the court must afford a strong presumption of correctness concerning the administrative findings, ultimately it is free to reweigh the evidence and substitute its own findings. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816–819 [85 Cal.Rptr.2d 696, 977 P.2d 693]; *State Farm Mutual Automobile Ins. Co. v. Quackenbush* (1999) 77 Cal.App.4th 65, 71 [91 Cal.Rptr.2d 381].)

On appeal, we review the record to determine whether the trial court's findings are supported by substantial evidence, resolving all evidentiary conflicts and drawing all legitimate and reasonable inferences in favor of the trial court's decision. (*Lake v. Reed, supra,* 16 Cal.4th at p. 457; see generally *Estate of Teel* (1944) 25 Cal.2d 520, 526–527 [154 P.2d 384] ["The trier of fact is the sole judge of the credibility and weight of the evidence and the findings of the trier of fact in this regard will not be disturbed so long as it is supported by substantial evidence"].) "Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings." (*Lake v. Reed,* at p. 457; see *Komizu v. Gourley* (2002) 103 Cal.App.4th 1001, 1005 [127 Cal.Rptr.2d 229].) We exercise de novo review, however, of the trial court's legal determinations. (*Lake v. Reed,* at pp. 456–457; *Taxara v. Gutierrez* (2003) 114 Cal.App.4th 945, 950 [8 Cal.Rptr.3d 172]; *Manriquez, supra,* 105 Cal.App.4th at p. 1233.)

II. *Substantial Evidence Supports the Trial Court's Decision to Grant the Petition*

Pointing out that in *Williams, supra,* 28 Cal.4th 408, the California Supreme Court held PAS test results admissible in criminal driving under the influence trials to prove a driver's BAC, the DMV contends PAS test results should likewise be admissible as substantive evidence of a driver's BAC in a DMV administrative hearing, as long as the proper foundational showing is made. The DMV asserts Roze's PAS test results were properly admitted at the administrative hearing because it presented undisputed evidence establishing the appropriate foundation for admission: that the PAS test equipment was properly functioning, the test was properly administered, and the test was conducted by a qualified operator. Based on this evidence, the DMV argues

the court erred in rejecting the PAS test results showing Roze's BAC to be 0.08 or greater; that the officer's noncompliance with title 17 requirements did not undermine reliability of the test results, and Roze did not present evidence either conflicting with the DMV's evidence or putting the test's reliability into question to justify the trial court's decision to give it no weight.

We do not address the DMV's preliminary arguments as to admission of the PAS test results in DMV administrative hearings, because the trial court in fact admitted the evidence of PAS test results into evidence.[3] As we shall explain, in assessing the trial court's decision for substantial evidence, we disagree with the DMV's latter argument that there was no evidence challenging the PAS test's reliability for purposes of assessing its evidentiary weight.

Our conclusion requires an understanding of *Williams, supra,* 28 Cal.4th 408, a case involving a criminal prosecution for driving under the influence (DUI). There, the trial court was faced with the defendant's motion to exclude PAS test results on grounds the testing procedures did not conform to title 17 requirements and the evidence was more prejudicial than probative. (*Id.* at p. 412.) The trial court admitted the evidence; the appellate court disagreed, excluding the PAS test results for failing to substantially comply with the regulations but finding the trial court's error in admitting them harmless. (*Id.* at pp. 412–413.) The California Supreme Court accepted the case for review to decide "whether the absence of substantial compliance with the regulations justifies a blanket exclusion of PAS results or goes merely to the weight of the evidence." (*Id.* at p. 411.)

---

[3] On that point, the court stated in part: ". . . [*Williams*] is a criminal case in which the issue in the [Penal Code section] 1538.5 motion was to exclude the tests. And the court said they're admissible. Didn't say how much weight the jury should give them. Didn't say how much weight I should give them. And, counsel, you agreed the other day arguing [*Williams*] that it goes only—the results are admissible but the issue of doubt and reliability goes to the weight and not admissibility. [¶] And so, you know, frankly, they are admissible. They're in front of me. They're in evidence. The question is how much weight should I give them? And that is the troubling thing in this case for me." Since the trial court ruled in the DMV's favor on admissibility of the PAS test results in this context, a ruling not appealed by Roze, any opinion on the question of whether *Williams* extends to the DMV administrative hearing context would be advisory only. (See, e.g., *In re S.C.* (2006) 138 Cal.App.4th 396, 414 [41 Cal.Rptr.3d 453]; see generally *People v. Slayton* (2001) 26 Cal.4th 1076, 1084 [112 Cal.Rptr.2d 561, 32 P.3d 1073]; *City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 69–70 [24 Cal.Rptr.3d 72].) We decline to reach such questions when it is unnecessary to do so. Our review is limited to whether substantial evidence supports the trial court's decision about the weight of the PAS test results.

■ The court concluded that noncompliance with title 17 requirements did not justify a rule of per se exclusion. Rather, it held noncompliance with applicable regulations "goes only to the weight of the evidence, not its admissibility." (*Williams*, *supra*, 28 Cal.4th at p. 414.) In so holding, the court adopted the reasoning of *People v. Adams* (1976) 59 Cal.App.3d 559 [131 Cal.Rptr. 190], which was based on the "principle that admissibility depends on the reliability and consequent relevance of the evidence, not the precise manner in which it was collected." (*Williams*, at p. 414.) "The *Adams* court authorized admitting breath test evidence after a showing of (1) the reliability of the instrument, (2) the proper administration of the test, and (3) the competence of the operator. [Citation.] [¶] To meet these requirements, the evidence would be admitted upon either a showing of compliance with the title 17 regulations or independent proof of the three elements." (*Williams*, at p. 414.) The California Supreme Court agreed with *Adams* that title 17 compliance and the tripartite foundational requirements were distinct and separate means to support the admission of PAS test results; that the title 17 standards established competency and constituted a "simplified method" of admitting the results into evidence, but they were not the *only* standard of competency. (*Williams*, at p. 416.) Thus, it concluded the trial court acted within its discretion in admitting the PAS test results into evidence, despite the fact that the Alco–Sensor IV used in that case was not tested with the frequency demanded by title 17, the test was not performed by certain laboratory employees or persons with specified training, the officer was not trained by a forensic alcohol analyst or trainee, the officer did not observe the suspect continuously for 15 minutes or test two separate breath samples, and the results were not described at trial in terms of alcohol concentration in the blood.[4] (*Williams*, at pp. 413, 417.)

It was in this specific context—determining the legal question of *admissibility* of evidence as opposed to the factual question concerning the *weight* it warrants—that the high court observed *Adams* "expressly rejected the notion that the noncompliance undermined the reliability of the results." (*Williams*, *supra*, 28 Cal.4th at p. 417, citing *People v. Adams*, *supra*, 59 Cal.App.3d at p. 567.) Under *Williams*, title 17 compliance is plainly relevant to the trier of fact's independent assessment of the *weight* of PAS test evidence for pur-

---

[4] In reaching this conclusion, the court noted that the particular Alco–Sensor IV device always performed within the acceptable range, within an error margin of 0.01 or less in all 19 checks, and any slight inaccuracies underreported the amount of alcohol present. (*Williams*, *supra*, 28 Cal.4th at pp. 417–418.) Further, the court observed the trial court could reasonably find the officer's observation for 13 instead of 15 minutes and his decision to take only one test did not deprive the results of reliability for purposes of its relevance; in particular it noted nothing in the defendant's truck supported an inference he had drank, smoked or vomited in the two minutes before the officers' observation. (*Id.* at p. 418, fn. 7.)

poses of proving unlawful blood-alcohol concentration. Indeed, the court pointed out that "title 17 regulations apply to PAS tests that determine the concentration of alcohol in the blood but not those that determine only its presence." (*Williams*, at p. 414, fn. 2, citing *People v. Bury* (1996) 41 Cal.App.4th 1194, 1202 [49 Cal.Rptr.2d 107], italics omitted.) It also acknowledged in closing that "laxity in complying with the regulations may undermine the reliability of the test." (*Williams*, at p. 418.) Under *Williams*, it was entirely appropriate for the superior court—acting as the trier of fact in assessing the weight of the evidence providing the basis for the DMV hearing officer's findings—to consider undisputed evidence that Officer Chase did not comply with title 17 regulations applicable to the PAS tests here, which were offered to prove Roze's actual blood-alcohol concentration.

It is plain from the record that the trial court here understood the standards set out in *Williams* and ruled Roze's PAS test results admissible in evidence with those standards in mind. However, when the court—in its role as the trier of fact—proceeded to assign the weight to be given those test results, it found they had little weight because, among other things, Officer Chase did not comply with the 15-minute observation period.

The sole question therefore before us is whether the court's factual determination in this regard is supported by substantial evidence, contradicted or uncontradicted, in the record. The DMV argues the trial court erred in giving little or no weight to the PAS test evidence; it maintains the level of Roze's blood alcohol was supported by "undisputed" evidence consisting not only of the PAS test results, but also circumstantial evidence of Roze's intoxication including his bloodshot and watery eyes, the smell of alcoholic beverage, and his unsteadiness on his feet. The DMV also points out Officer Chase testified Roze performed poorly on field sobriety tests in that he swayed, underestimated the passage of time, and lost balance on a one-leg stand test. The DMV asserts that "[a]ll of this evidence supported the Hearing Officer's determination that Mr. Roze had been driving with a blood alcohol content of [0].08 percent or greater."

■ These arguments focus exclusively on the evidence supporting the DMV hearing officer's conclusions, and therefore misapply the substantial evidence standard. As stated, our task is to search for evidence or draw inferences from the evidence supporting the trial court's decision that the PAS test results in this case were not sufficiently reliable to support the hearing officer's finding. Contrary to DMV's assertion that "Roze presented absolutely no evidence . . . which would place into question the reliability of

his breath test," such evidence does exist in the record. There is no dispute Officer Chase declined to follow title 17 procedures in conducting the PAS tests on Roze. He performed the test only nine minutes after Roze spit chewing gum from his mouth; the officer explained he did not observe Roze for 15 minutes because he only considered the test a field sobriety test. The trial court reasonably concluded that Officer Chase did not conduct the PAS test in such a way to be used as proof of Roze's actual blood-alcohol concentration, but that he intended only to learn whether there was alcohol present in Roze's system.

Additionally, the record contains evidence from which the trial court could legitimately conclude that noncompliance with the title 17 requirements under the circumstances of Roze's testing could result in a false positive test. Officer Garland, questioned by Roze on cross-examination, testified that after he had taken three drinks of beer, he had obtained a false positive result from a PAS test conducted in violation of the 15-minute observation rule, and expressed his general opinion without objection that it was important to wait the period to obtain accurate results. Officer Chase admitted he smelled an odor of alcoholic beverage when he contacted Roze after pulling him over; the court could reasonably infer Roze had recently consumed alcohol. In any event, there is no dispute Roze had chewing gum in his mouth, which he removed only nine minutes later or less, and the officer did not testify that Roze had not "ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten or smoked" for at least 15 minutes before collection of the breath sample. (Cal. Code Regs., tit. 17, § 1219.3; *Manriquez, supra,* 105 Cal.App.4th at pp. 1230, fn. 1, 1236, fn. 3.) Compliance with the continuous observation requirement ensures a subject's mouth is free from alcohol or any other foreign matter that could retain alcohol and potentially influence the results of the test. (*Manriquez,* at p. 1236, fn. 3.) Because these standards were not followed and the evidence shows Roze indeed had foreign matter in his mouth within 15 minutes of giving his breach samples, the trial court could reasonably question the accuracy of Roze's test results in giving them evidentiary weight.

██ Furthermore, in his arrest report, Officer Chase noted Roze had given two "weak" breath samples. This evidence provides further support for the trial court's decision to give the PAS tests little evidentiary weight. Title 17 "requires the breath sample to be 'essentially alveolar in composition,' i.e. it must come from deep within the lungs." (*Manriquez, supra,* 105 Cal.App.4th at p. 1236, fn. 3.) The trial court could legitimately infer a weak breath sample is not "alveolar" within the meaning of the regulation and that the

results were adversely affected by the presence of foreign matter or residual alcohol in Roze's mouth.

 The foregoing evidence calls into question the accuracy of Roze's PAS test results here, and the trial court could reasonably conclude based on the evidence before it that the PAS test was not a sufficiently reliable reading of Roze's actual blood-alcohol concentration based on the manner in which it was conducted and the absence of title 17 compliance. The PAS test is not the scientific equivalent of a postarrest blood, breath or urine test, and due to questions about its reliability, the Legislature does not treat it as the functional equivalent of the mandatory blood-alcohol level test under Vehicle Code section 23612, subdivision (a). (Veh. Code, § 23612, subd. (h);[5] *People v. Wilson* (2003) 114 Cal.App.4th 953, 959–960 [8 Cal.Rptr.3d 167] [in part observing that the Legislature treats the tests separately in Veh. Code, § 23612, subds. (h) & (i)].) "The Legislature may well have found that the results of the PAS breath test, normally administered by a police officer in the field, are less accurate and reliable than the chemical tests administered under more controlled circumstances and likely with more precise equipment. The immediate purpose of the implied consent law 'is to obtain the *best* evidence of blood alcohol content at the time of the arrest of a person who is reasonably believed to driving while intoxicated.' [Citation.] In the absence of any evidence to the contrary, we must accept the Legislature's implicit finding that the tests are not equivalent, and therefore that despite the taking of the PAS test, it remains important to obtain the more reliable results of the chemical test before the evidence becomes unavailable with the passage of time." (*People v. Wilson, supra,* 114 Cal.App.4th at p. 960.)

We are unpersuaded by each of the DMV's specific arguments challenging the trial court's conclusion. The DMV argues Roze presented no evidence that the presence of gum would adversely affect the test results. However, this argument misunderstands the applicable burdens of proof at Roze's administrative hearing. Even assuming the DMV was entitled to the Evidence Code section 664 presumption of validity, Roze rebutted that presumption by

---

[5] Vehicle Code section 23612, subdivisions (h) and (i) provide: "(h) A preliminary alcohol screening test that indicates the presence or concentration of alcohol based on a breath sample in order to establish reasonable cause to believe the person was driving a vehicle in violation of [Vehicle Code section] 23140, 23152, or 23153 is a field sobriety test and may be used by an officer as a further investigative tool. [¶] (i) If the officer decides to use a preliminary alcohol screening test, the officer shall advise the person that he or she is requesting that person to take a preliminary alcohol screening test to assist the officer in determining if that person is under the influence of alcohol or drugs, or a combination of alcohol and drugs. The person's obligation to submit to a blood, breath, or urine test, as required by this section, for the purpose of determining the alcohol or drug content of that person's blood, is not satisfied by the person submitting to a preliminary alcohol screening test. The officer shall advise the person of that fact and of the person's right to refuse to take the preliminary alcohol screening test."

eliciting evidence on cross-examination that Officer Chase did not comply with title 17 requirements. (See *Manriquez, supra*, 105 Cal.App.4th at pp. 1232–1233; see also *Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1172–1173 [97 Cal.Rptr.2d 451].) The burden had thus shifted to the DMV to prove that the test was reliable despite the violation. (*Manriquez*, at p. 1233.) Thus, at the administrative hearing, it was for the DMV to show that the presence of chewing gum would not affect the test results. It did not do so.

The DMV further argues Officer Chase's intent to use the PAS device as a field sobriety test does not provide a reason to ignore a "properly administered" PAS test. Officer Chase did testify he complied with operational instructions on the PAS test machine consistent with his training. Such testimony shows the test was properly administered for purposes of establishing its admissibility into evidence, but as *Williams* demonstrates, that is a different question than the reliability of the test results for their evidentiary weight, on which title 17 compliance is relevant. The court was entitled to conclude the PAS test was not properly administered for the purpose of obtaining a reliable reading of Roze's actual blood-alcohol concentration, since the title 17 regulations required the officer to wait 15 minutes while ensuring Roze had not ingested food or drink, smoked or regurgitated before taking the breath sample. The DMV's reliance on *People v. Bury, supra*, 41 Cal.App.4th 1194, and *People v. Hallquist* (2005) 133 Cal.App.4th 291 [34 Cal.Rptr.3d 621] is misplaced. Both cases addressed the *admissibility* of PAS test results and foundational requirements relevant to that determination. (*Bury*, at pp. 1202–1203; *Hallquist*, at p. 297.) Indeed, *Hallquist* recognizes that *Williams* holds title 17 deficiencies in the test's administration are relevant to assessing the weight of the evidence. (*Hallquist*, at p. 297.) Neither case deals with the substantial evidence question presented here.

Focusing on the trial court's reasoning, the DMV asserts there was nothing unfair to Roze in admitting the PAS test results in this case because "[h]ad the chemical test not malfunctioned, the chemical test results would have been recorded in the sworn statement which would have sufficed to establish Roze was driving with a prohibited blood alcohol content," results that Roze would not have rebutted. The DMV also points to additional undisputed evidence of reliability, namely, that accuracy checks on the device were within title 17's accuracy range as well as the fact Officer Chase conducted two breath tests with almost identical results. The arguments fail because, as we have explained, Roze did in fact present evidence to rebut the PAS test results via his cross-examination of Officers Chase and Garland. And again, our role is to search for substantial evidence supporting the *trial court's* conclusions, not those of the DMV hearing officer. Having found such evidence, we are bound to uphold the trial court's determination.

## DISPOSITION

The judgment is affirmed.

McDonald, Acting P. J., and McIntyre, J., concurred.