Filed 6/11/15 Joseph v. Dept. Motor Vehicles CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JASON LAWRENCE JOSEPH, | |
| Plaintiff and Respondent, | E059062 |
| v. | (Super.Ct.No. CIVDS1211667) |
| DEPARTMENT OF MOTOR VEHICLES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge. Reversed.

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, and Michael E. Whitaker and Michael J. Hui, Deputy Attorneys General, for Defendant and Appellant.

Rodney Gould for Plaintiff and Respondent.

Defendant and appellant Department of Motor Vehicles (DMV) suspended the driving privileges of plaintiff and respondent Jason Lawrence Joseph for violating Vehicle Code section 23136, which prohibits a person under the age of 21 from driving a

1

vehicle with a blood-alcohol concentration (BAC) of 0.01 percent or greater, as measured by a preliminary alcohol screening (PAS) test or other chemical test. The officer who pulled Joseph over administered two PAS tests. The first indicated a BAC of 0.771 percent; the second indicated a BAC of 0.081 percent.

An administrative hearing officer upheld the suspension, a decision that Joseph challenged in the trial court by petition for writ of mandate. The trial court granted Joseph's petition, finding among other things that the disparity between the results yielded by the two PAS tests rendered both inherently unreliable.

DMV contends on appeal that the trial court's ruling was an abuse of discretion. We agree, and therefore reverse the trial court's decision to grant the petition for writ of mandate.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of August 14, 2012, at approximately 11:24 p.m., a police officer pulled Joseph over after observing him driving the wrong way on a one-way street. On that date, Joseph was under the age of 21. The officer observed Joseph's eyes to be bloodshot and watery, and detected a mild odor of alcohol emitting from his breath and person. Joseph told the officer that he had not been drinking.

The officer administered two PAS tests.[1]  The first, administered at 11:30 p.m., indicated a BAC of 0.771 percent.  The second, performed with a different machine of the same type 15 minutes later, indicated a BAC of 0.081 percent.

Joseph was cited for violating Vehicle Code section 23136 by driving a vehicle while under 21 years of age and with a BAC of 0.01 percent or greater, driving the wrong direction on a one way street, and for not having proof of insurance.  He was also served with an "Administrative Per Se Suspension/Revocation Order And Temporary Driver License" (APS order) based on the results of the PAS tests.  The APS order notified Joseph that his driving privileges would be suspended for one year or revoked for two or three years, effective 30 days from the issue date of the APS order, and informed him of his right to challenge the suspension by requesting a hearing.

Joseph requested a hearing to review the suspension of his driving privileges, as allowed under the terms of the APS order and Vehicle Code section 13558.  (Veh. Code, § 13558, subd. (a) ["Any person, who has received a notice of an order of suspension or revocation of the person's privilege to operate a motor vehicle . . . may request a hearing on the matter . . . ."].)  At the hearing, on September 26, 2012, a calibration officer—not the officer who pulled defendant over—testified that both of the machines used to

---

[1] "A PAS device is a breath-testing instrument used to determine either the presence or concentration of alcohol in a person's blood. . . .  A PAS test is differentiated from mandated chemical testing of a suspect's blood-alcohol level (BAL) after a lawful arrest under the implied consent law." (*People v. Bury* (1996) 41 Cal.App.4th 1194, 1198.)  A PAS test is a "field sobriety test," which does not satisfy a driver's obligation to submit to a blood, breath or urine test under the implied consent law.  (Veh. Code, § 23612, subds. (h), (i).)

administer PAS tests were working properly. The calibration officer acknowledged that the 0.771 percent result on the first PAS test seemed implausible, stating that the highest result he had previously heard of was "probably a .3 something." He proposed three possibilities for what caused the anomalous result: the machine not working properly, the test not being administered properly, or the officer who administered the test making a mistake when recording the result. He conceded, however, that the theory of a mistake in recording the result did not adequately account for the 1 in the third position after the decimal point.

The arresting officer did not testify at the hearing; he was not subpoenaed to testify. His observations and the results of the PAS tests he administered were submitted to the DMV, and admitted into evidence at the hearing, on an "Under Age 21 Officer's Statement" form, often referred to by the parties by the form's number, DS 367M.

Joseph called an expert witness, who characterized himself as "a DUI expert witness, or forensic alcohol consultant." The expert added a fourth possibility regarding the cause of the anomalous first PAS test result: "mouth alcohol" contamination, that is, "the situation where there's alcohol in the mouth that got there from some source other than deep lung air," such as medications, breath spray, or a "gastric event where vapors from the stomach can come up." In the expert's opinion, neither PAS test could be considered reliable; the first because of the "unbelievable" result, the second because the result was "not corroborated." The expert also posited that when the officer obtained the new machine for the second test, there must have been some "interruption of observation" of the defendant. The expert suggested that during that interruption, "the

4

person could have burped or belched," thereby replenishing the level of mouth alcohol, and raising "a lot of question marks" about the reliability of the test for purposes of measuring BAC.

In a written order issued October 8, 2012, the hearing officer found the preponderance of the evidence supported the suspension of defendant's driving privileges, and re-imposed the suspension of defendant's driving privileges.

Joseph challenged the hearing officer's decision by means of petition for writ of mandate, filed November 2, 2012, which was heard by the trial court on April 26, 2013. The trial court, exercising its independent judgment, disagreed with the hearing officer, and granted Joseph's petition. Judgment was entered on May 13, 2013.

## II. DISCUSSION

### A. Standard of Review.

"In ruling on [Joseph's] petition for writ of mandate, the trial court was required to determine, by exercising its independent judgment, whether the hearing officer's decision was supported by the weight of the evidence. [Citations.] 'When the trial court is authorized to exercise independent judgment on the evidence, on appeal [we] need only review the record to determine whether substantial evidence supports the trial court's findings. [Citations.]' [Citations.]" (*Baker v. Gourley* (2000) 81 Cal.App.4th 1167, 1172 (*Gourley*) [Fourth Dist., Div. Two].) However, when a party challenges on appeal a ruling that it failed to carry a burden of proof, the substantial evidence standard is inappropriate, and "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.]'" (*Sonic*

*Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465-466.)  We review rulings regarding admissibility of evidence for abuse of discretion, that is, "'whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered.'"  (*Molenda v. Department of Motor Vehicles* (2009) 172 Cal.App.4th 974, 986.)

**B.  Analysis.**

The DMV contends that the trial court abused its discretion by determining that the written statement by the arresting officer did not fall within the public records exception to the hearsay rule (Evid. Code, § 1280), and by finding both PAS test results to be "inherently unreliable," and therefore inadmissible under *People v. Adams* (1976) 59 Cal.App.3d 559 (*Adams*).  We agree, and therefore reverse.

*1.  Overview of Statutory Scheme*

Joseph's license was suspended pursuant to Vehicle Code section 23136, which is part of an administrative suspension procedure, whereby a person who is determined to have been driving with a prohibited amount of alcohol in his or her blood has driving privileges suspended without the need for a conviction for a criminal offense.  (*Lake v. Reed* (1997) 16 Cal.4th 448, 454.)  "'[T]he express legislative purposes of the administrative suspension procedure are:  (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions.'"  (*Ibid.*)

6

Vehicle Code section 23136 provides, among other things, that "it is unlawful for a person under the age of 21 years who has a blood-alcohol concentration of 0.01 percent or greater, as measured by a preliminary alcohol screening test or other chemical test, to drive a vehicle."  (Veh. Code, § 23136, subd. (a).)  Section 23136 is a "zero tolerance law" designed to penalize the presence of alcohol in the blood of anyone under the age of 21 who operates a motor vehicle.  (*Coniglio v. Department of Motor Vehicles* (1995) 39 Cal.App.4th 666, 677 (*Coniglio*), abrogated on other grounds as recognized by *Molenda*, *supra*, 172 Cal.App.4th at p. 999, fn. 6.)  "[B]y setting the prohibited blood-alcohol level at the lowest detectable amount, [section 23136] penalizes the consumption of alcohol, contemporaneous with the driving of an automobile."  (*In re Jennifer S.* (2009) 179 Cal.App.4th 64, 72 (*Jennifer S.*).)  "[T]he goal of section 23136 was to enhance public safety, and indirectly, to discourage minors from consuming *any* alcohol before driving." (*Bobus v. Department of Motor Vehicles* (2004) 125 Cal.App.4th 680, 685 (italics added).)  A zero tolerance law violation is subject only to civil penalties, to be administered by the DMV.  (*Coniglio*, *supra*, at p. 673.)

A peace officer who has reasonable cause to believe that a person is in violation of Vehicle Code section 23136 must ask that person to take a PAS test to determine the presence of alcohol in the person.  (Veh. Code, § 13388, subd. (a).)  If the person complies and the test reveals a BAC of 0.01 percent or greater, the officer must serve the person with a notice of order of suspension of the person's driving privilege, confiscate the person's driver's license, issue a temporary license, and send the DMV a "sworn report of all information relevant to the enforcement action . . . ."  (Veh. Code, §§ 13380,

subd. (a); 13388, subd. (b).)  The sworn statement must be made on official DMV forms. (Veh. Code, § 13380, subd. (b).)

At an administrative hearing challenging a suspension, the DMV bears the burden of proof.  (*Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536.)  The evidentiary standards, however, are somewhat relaxed.  An administrative hearing before the DMV "does not require the full panoply of the Evidence Code provisions used in criminal and civil trials."  (*Petricka v. Department of Motor Vehicles* (2001) 89 Cal.App.4th 1341, 1348.)  In most respects, Government Code section 11513, which applies to administrative hearings generally, governs the admission of evidence.  (*Lake v. Reed*, *supra*, 16 Cal.4th at p. 458.)  Except as specifically provided, "[a]ny relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions. (Gov. Code, § 11513, subd. (c).)  "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."  (*Id.*, subd. (d).)

2. *The Arresting Officer's Sworn Statement Was Admissible Pursuant to an Exception to the Hearsay Rule.*

Evidence Code section 1280 provides an exception to the hearsay rule for public employee records meeting certain requirements.  Section 1280 provides that written hearsay evidence is admissible if "(a) the writing was made by and within the scope of

8

duty of a public employee; (b) the writing was made at or near the time of the event, and; (c) the sources of information and the method and time of its preparation were such as to indicate its trustworthiness." (*McNary v. Department of Motor Vehicles* (1996) 45 Cal.App.4th 688, 695; see Evid. Code, § 1280.) Evidence Code section 664 creates "a rebuttable presumption that an official duty has been regularly performed." (*Gourley*, *supra*, 81 Cal.App.4th at p. 1172; see Evid. Code, § 664.) Thus, "once the DMV presents competent evidence in the form of documents contemplated in the statutory scheme to establish its prima facie case, the licensee must produce competent affirmative evidence of the nonexistence of the presumed facts sufficient to shift the burden of proof back to the DMV." (*Gourley*, *supra*, at p. 1172; see *Jackson v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 730, 739 (*Jackson*) [licensee must show officer "failed in his duty to observe and report correctly the event described"].)

Here, the sworn statement of the arresting officer is admissible evidence under Evidence Code sections 1280 and 664. (See, e.g., *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 815.) The officer had a duty to make the writing. (See Veh. Code, § 13380, subd. (a) [requiring peace officer to submit to the DMV a sworn report of "all information relevant to the enforcement action" after service of notice of suspension pursuant to Veh. Code, § 13388].) The report was signed and dated August 15, 2012; Joseph was pulled over shortly before midnight on August 14, 2012. And there is nothing in evidence that suggests the officer "failed in his duty to observe and report correctly the event described." (*See Jackson*, *supra*, 22 Cal.App.4th at p. 739.) Although Joseph has contested the reliability of the PAS tests described in the report, he

9

has not argued that the results themselves, or the other relevant events, were inaccurately reported in the officer's statement.[2] Thus, all of the elements of the public records exception to the hearsay rule are satisfied, and to the extent the trial court found the arresting officer's sworn statement barred by the hearsay rule, that finding was erroneous as a matter of law.

3. *The Result of the Second PAS Test Was Admissible.*

Having concluded that the arresting officer's sworn statement was admissible evidence, we turn to the question of whether the PAS test results described therein were admissible. Even where an officer's sworn statement is "admissible and competent evidence under an exception to the hearsay rule . . . [e]ach matter sworn to must itself be supported by an adequate foundation of personal knowledge by the officer and any other appropriate guarantee of reliability, or that matter is not admissible and cannot be relied upon." (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140 (*Davenport*).)

The regulations promulgated for forensic alcohol analysis in sections 1215 through 1222.2 of title 17 of the California Code of Regulations (title 17 regulations) "establish a

---

[2] The trial court found no "reasonable basis" in the record to support the notion that the 0.771 percent result for the first PAS test was the result of a "scrivener's error." That factual finding is supported by substantial evidence; the result was recorded as 0.771 percent in more than one place on the arresting officer's statement and the calibration officer conceded in his testimony at the administrative hearing that the presence of the third digit after the decimal point is unexplained by the scrivener's error theory. This factual finding, in the absence of any other affirmative evidence the officer failed in his duty to accurately report the results he obtained from the PAS tests, compels the conclusion that defendant failed to make any showing of the nonexistence of presumed facts.

10

standard for the competency of the results of blood-alcohol tests." (*Davenport*, *supra*, 6 Cal.App.4th at p. 142.) The title 17 regulations, however, "apply to PAS tests that determine the *concentration* of alcohol in the blood but not those that determine only its *presence*." (*People v. Williams* (2002) 28 Cal.4th 408, 414, fn. 2 (*Williams*).) For purposes of determining whether a person has violated Vehicle Code section 23136, the PAS test is administered to determine the presence of alcohol, not its precise concentration in the blood. (See *Coniglio*, *supra*, 39 Cal.App.4th at p. 677.) Here, therefore, the PAS tests administered by the arresting officer are "admissible upon a showing of *either* compliance with the regulations set forth in Title 17 *or* the foundational elements described in *Adams*, *supra*, 59 Cal.App.3d at p. 561, which include: (1) properly functioning equipment, (2) a properly administered test, and (3) a qualified operator." (*Molenda*, *supra*, 172 Cal.App.4th at p. 1000.)

With respect to the first test administered by the arresting officer, there was some evidence that the *Adams* factors were satisfied; the calibration officer testified that the machine used was working properly, and the arresting officer certified in a sworn statement that he administered the test properly, and that he had been trained in the operation of the testing device and administration of the PAS test.[3] Furthermore, the

---

[3] Joseph objects that the arresting officer's certification that he was "'competent and qualified'" to use the PAS testing device is a "boilerplate averment," amounting to an inadmissible legal conclusion, and insufficient to satisfy the third element of the *Adams* analysis. This argument—arguably not raised with sufficient specificity below to avoid waiver on appeal—ignores that the officer's report to the DMV is statutorily required to be made on official DMV forms. (Veh. Code, § 13380, subd. (b).) Furthermore, Joseph presented no evidence tending to show the arresting officer lacked the necessary training

[footnote continued on next page]

statutory presumption that an official duty is regularly performed, codified at Evidence Code section 664, applies with respect to the officer's administration of the PAS test.**4** (See *McKinney v. Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525-526 (*McKinney*) ["Given the statutory presumption that official duty has been regularly performed (Evid. Code, § 664), the burden was on the person challenging the result . . . to show that there was some irregularity in the administration of the test such as would bring into question the reliability of the [blood alcohol level] readings."]; Veh. Code, § 23136, subd. (c)(2) [requiring testing to be administered by peace officer having reasonable cause to believe person had violated Veh. Code, § 23136, subd. (a)].)

Here, however, there is affirmative evidence in the record tending to rebut the statutory presumption that the first PAS test was "regularly performed" (Evid. Code, § 664), thereby undermining the DMV's foundational showing. Both the calibration officer and Joseph's expert witness agreed that the 0.771 percent result was likely

---

*[footnote continued from previous page]*

and qualifications to perform the PAS test properly. He chose not to subpoena the arresting officer so as to examine him regarding his training and qualifications, and he offered no other affirmative proof tending to impeach the arresting officer's training or qualifications. As such, Joseph fails to overcome the presumption that the officer "regularly performed" his official duty to obtain the appropriate training and qualifications to administer the PAS test properly, a duty that may be inferred from the explicit statutory requirement that a peace officer administer the test under certain circumstances. (Evid. Code, § 664; Veh. Code, § 23136, subd. (c)(2).)

**4** Joseph's argument that his due process rights are violated by requiring him to rebut a presumption of reliability where title 17 regulations do not apply to the administration of the PAS test is without merit. (See *Davenport*, *supra*, 6 Cal.App.4th at p. 144 ["due process does not require the Department to have the initial burden of establishing the reliability of chemical tests offered into evidence against the licensee"].)

inaccurate. A reasonable inference derived from such a test result—combined with the circumstance that the test subject was neither dead nor comatose—is that either the testing machine malfunctioned or the arresting officer made a mistake in administering the PAS test.[5] The trial court therefore did not abuse its discretion by concluding that the *Adams* factors were not satisfied with respect to the first PAS test, even if it could not be determined definitively whether it was a glitch in the testing machine or an error in administering the test that was the cause of the anomalous result.

The record requires a different conclusion, however, with respect to the second PAS test. The second test was conducted with a different machine than the first test. Nothing about the result obtained—0.081 percent BAC—is implausible on its face. The record reveals no affirmative evidence that the second testing machine was not functioning properly, that the second test was not properly administered, or that the arresting officer was not a "qualified operator" in the meaning of the third prong of the *Adams* analysis. (*Adams*, *supra*, 59 Cal.App.3d at p. 561; see *McKinney*, *supra*, 5 Cal.App.4th at p. 525.) Joseph therefore has shown no irregularity in the administration of the second PAS test such as would bring its reliability into question.

Joseph's expert witness proposed that the result of the second test, too, might have been the result of mouth alcohol contamination, rather than a true reflection of BAC. The expert conceded, however, that "15 minutes is usually enough time for [mouth] alcohol to

---

[5] Contrary to the trial court's comment at oral argument, nothing about a single anomalous result suggests that the officer who conducted the test was not trained and qualified to administer the test, as required by the third prong of the *Adams* analysis.

13

dissipate completely."**6** Here, there was a 15-minute interval between the administration of the first and second PAS tests. The expert proposed Joseph "could have burped or belched in the middle of that 15 [minute] observation period, and then you've replenished some of that alcohol." But there is precisely zero evidence—the expert's speculation as to what *might* have happened is not evidence— either that Joseph did "burp or belch" during those 15 minutes, or that the officer's observation of Joseph during the 15 minutes was interrupted in any way, so as to allow such an event to occur without the officer noticing.**7** At most, Joseph's expert's testimony raises a possibility, based on speculation, that the result of the second PAS test was the product of mouth alcohol, rather than a true indication of BAC. Possibilities and speculation, however, are insufficient to rebut the DMV's foundational showing regarding the PAS test, for purposes of the *Adams* analysis. (See *Gourley*, *supra*, 81 Cal.App.4th at p. 1174 ["mere possibility" that integrity of a sample was compromised, raised by petitioner's expert, insufficient to undermine foundational trustworthiness of blood sample taken for forensic alcohol analysis].)

Joseph's expert also made much of his view that to have "scientific confidence" in the results of a PAS test, two test results that "agree with each other" must be obtained.

_____

**6** Title 17 requires a 15-minute observation period prior to the collection of breath samples. (See Cal. Code Regs., tit. 17, § 1219.3.)

**7** Moreover, if the alcohol in Joseph's mouth was "replenished" from a burp or belch during the period between the first and second PAS tests, that would tend to indicate that he had in fact consumed alcohol previous to being pulled over, rather than the first, anomalous result being from some innocuous possible source of mouth alcohol, such as a breath spray. As noted, Vehicle Code section 23136 "penalizes the consumption of alcohol, contemporaneous with the driving of an automobile." (*Jennifer S.*, *supra*, 179 Cal.App.4th at p. 72.)

The expert pointed out that the standards of procedure set by the title 17 regulations require breath alcohol analysis to include analysis of two separate breath samples, and the testing results "have to agree to within .02 of each other for it to be a valid test."  (See Cal. Code Regs., tit. 17, § 1221.4.)  As noted, however, the procedures required by title 17 do not apply to the administration of a PAS test in the circumstances of this case.  (*Williams*, *supra*, 28 Cal.4th 408, 414, fn. 2.)  And it is not our role to second guess the Legislature's determination that a single PAS test is a sufficiently reliable indicator of the presence of alcohol for purposes of enforcing the zero tolerance law codified in Vehicle Code section 23136, regardless of whether such a result would be worthy of "scientific confidence" for other purposes.  (See Veh. Code, § 23136, subd. (b) [setting BAC limit for purposes of the section at "0.01 percent or greater, as measured by a preliminary alcohol screening test . . . ."].)

In sum, given the absence of any nonspeculative, affirmative evidence undermining the DMV's foundational showing, the second PAS test was admissible evidence, and the trial court abused its discretion by determining otherwise.

*4. The Trial Court's Judgment in Favor of Joseph Must Be Reversed.*

The uncontroverted, admissible evidence presented by the DMV established that Joseph was under the age of 21, and driving a vehicle with a BAC of greater than 0.01 percent as measured by a PAS test, thereby satisfying all the elements of a violation of Vehicle Code section 23136.  Put another way:  No substantial evidence in the record supports a finding that any of the elements of a section 23136 violation were *not* satisfied.

15

The record therefore compelled a finding in favor of the DMV as a matter of law at the administrative hearing, and the trial court erred by reversing the hearing officer's ruling.

### III. DISPOSITION

The trial court's judgment granting Joseph's petition for writ of mandate is reversed. The trial court is directed to issue a new order denying the petition and reinstating the DMV's suspension order. Joseph shall pay DMV's costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST

Acting P. J.

We concur:

MILLER

J.

CODRINGTON

J.